CHARLES L. BUCKI, APPELLANT, VS. MAX SEITZ, APPELLEE.

1. A new trial will not be granted because of the admission of illegal evidence to prove a fact which is fully established by other and legal evidence in the cause, it being clear that the verdict was not influenced thereby.

2. *Qurere:* Whether an exception in the form "objection (stating

grounds), objection overruled, exception noted," is sufficiently definite to be considered by an appellate court.

3. The plea of never was indebted is inapplicable to a declaration declaring only upon a special contract.

4. Where there is no evidence to support a verdict a new trial will be granted.

5. Where plaintiff and defendant orally agree upon the terms of a contract, and it is afterwards reduced to writing and signed by plaintiff, and the written contract is then forwarded to defendant to sign, who, before affixing his signature to the instrument, inserts therein stipulations limiting his liability, and subsequently delivers such written contract to the plaintiff, the stipulations so inserted are valid and binding in any action instituted by the plaintiff to recover for a breach of the *written* contract.

6. Plaintiff's right of recovery is confined to the cause of action alleged in his declaration. If he fails upon such grounds he can not be permitted to recover on any other not alleged.

Appeal from the Circuit Court for Suwannee county.

STATEMENT.

On February 1, 1892, appellee (plaintiff below) filed his declaration, containing two counts, in an action begun by him against appellant in the Circuit Court of Suwannee county, alleging by his first count, substantially, that plaintiff complained of defendant, who had been summoned to answer plaintiff in an action for breach of contract, for that whereas the defendant claimed to be the owner of large bodies of lands in said county, and elsewhere in the State, containing phosphate of lime, and was desirous of mining same if it could be done profitably; and defendant contracted and agreed with plaintiff to furnish said lands, and for the purpose of mining the phosphate and preparing same for market to furnish all requisite capital, implements, machinery and labor to carry on the bus-

iness of mining, and to permit plaintiff to take charge of and superintend the business and laborers, and in consideration of the time, skill and knowledge of plaintiff to be devoted to the business, the defendant agreed to give and pay over to plaintiff for his time and services one-eighth of the net profits derived therefrom; that it was mutually agreed that the business should continue so long as the same proved profitable; that after the first shipment of phosphate, or before, if the quantity or quality of phosphate taken from the land was such as not to satisfy the defendant that the business would be profitable, then the business should cease and determine; that on April 8, 1891, plaintiff began work on lands claimed by defendant in said county, in pursuance of the agreement and in performance of his part thereof; that plaintiff was an expert in phosphate, and devoted his entire time, skill and knowledge to the business, and by his superior skill and knowledge as an expert he opened large and valuable mines of phosphate on said lands and took therefrom large quantities of rock containing a large *per cent.* of phosphate of lime; that same was found, located and uncovered by plaintiff in such quantities that the profits of the business must have been very great had the business been continued, but that defendant on August 30, 1891, before any of the phosphate had been shipped or prepared for market, stopped the work and prevented plaintiff from further prosecution of the business, and refused to provide requisite capital, implements, machinery and labor to carry on the business, notwithstanding the quantity and quality of phosphate was not unsatisfactory to defendant, and the business would have been extremely profitable, and plaintiff has ever been ready

and willing to perform his part of the agreement, and has offered to perform same, of which defendant had notice; that by reason of defendant's failure to perform said agreement plaintiff has lost large profits from the business, to his damage of $30,000.

The second count of the declaration was in substance the same as the first, except that it alleged that by reason of defendant's failure to perform his agreement, the value of the plaintiff's superior skill, knowledge, time and labor which he had devoted to said business, and which had been greatly profitable to defendant in developing, locating and uncovering large and rich beds of rock containing a large *per cent.* of phosphate of lime in great quantities on defendant's lands, had been entirely lost to plaintiff, to his damage in the sum of $30,000, and omitted that portion of the first count which alleged that by reason of defendant's failure to perform his agreement, plaintiff had lost large profits from the business, to his damage of $30,000.

There was filed with the declaration a written agreement in the following language: "Articles of agreement made and entered into this second day of April, A. D. 1891, between Charles L. Bucki of the first part, Max Seitz of the second part, and Jacob D. Buckey of the third part, witnesseth: That whereas the said party of the first part is the owner and possessor of large bodies of land in Suwannee county, and other counties in the State of Florida, said to contain phosphate of lime, and is desirous of mining the same if it can be profitably done, now, therefore, it is agreed between the parties of the first and second part as follows, to-wit: 1st. That in consideration of the premises and agreements herein contained by and on the part of the party of the second part, the party of the

first part hereby agrees to furnish and provide the lands said to contain phosphates, for the purpose of taking therefrom the phosphates they contain, preparing the phosphate for market, and to furnish and provide all the requisite capital, implements, tools and machinery and labor, *up to the sum of ($2,500) twenty-five hundred dollars, which sum is to prepare and ship first cargo*, to carry on the business of mining phosphate in the lands aforesaid. 2d. The party of the second part hereby agrees, in consideration of the promises and agreements on the part of the party of the first part, to take charge of and superintend the business aforesaid, and laborers and employes engaged therein, and to devote his time, skill and knowledge to said business for one-eighth of the net profits derived therefrom, which the party of the first part hereby agrees to give and pay over to him, the said party of the second part, for his time and services. In consideration of services heretofore rendered, and which may be hereafter rendered by the party of the third part, the said party of the first part hereby agrees to give and pay over to him one-eighth of the net profits derived from said business, and the remaining portions of such net profits to be the property of the party of the first part. 3d. It is further agreed by all the parties hereto, that after the sale of the first shipment or cargo of phosphate, or before if the party of the first part is not satisfied with the quantity or.quality of said phosphate, then the said business shall cease and determine; otherwise the said business shall be continued as long as it is profitable. It is further agreed that all of the implements, tools and machinery employed in the business shall be and remain the property of the party of the first part, and that the said

business shall be done and accounts kept in the name of party of the first part. In witness whereof, we have hereunto subscribed our names, the day and year above written.

> CHAS. L. BUCKI,
> MAX SEITZ,
> JACOB D. BUCKEY."

On March 7th, 1892, defendant filed pleas to the declaration as follows: 1st. That he never was indebted as alleged therein. 2d. That he was not guilty of the several breaches of contract alleged therein. 3d. That he "hath fully performed the obligations and promises in said agreement set forth, to-wit: Defendant hath furnished the full sum of $2,500 and all impliments, tools and labor and the lands said to contain the phosphate of lime, to plaintiff, and defendant denies that he was to do or to furnish more money, tools or implements than to the value and sum of $2,500 with which the plaintiff was to prepare the first cargo of phosphate of lime for shipment." 4th. That "notwithstanding he hath fully performed his part of said agreement and furnished the lands containing phosphate of lime, and the implements, tools, machinery and labor and capital to the amount of $2,500 to plaintiff, pursuant to agreement, with which, by said agreement, plaintiff was to prepare the said first cargo of phosphate for shipment, yet the said plaintiff disregarded his said agreement, and failed and neglected to expend said monies in the mining and preparing a cargo of phosphate for shipment with said capital, implements, labor and tools so provided by defendant as aforesaid." 5th. That plaintiff was not an expert in mining and preparing phosphate of lime for shipment, and that his operations with defendant's phosphate and lands

were not carried on in a business-like, skillful and expert manner. 6th. That defendant was not satisfied with the quantity or quality of phosphate mined and being mined by plaintiff on defendant's lands. 7th. That before action he discharged and satisfied plaintiff's claim for services rendered by payment.

On May 12th, 1892, plaintiff filed his joinder of issue in this language: "Issue is joined on the foregoing pleas numbered 1, 2, 3, 4, 5, 6 and 7."

On May 12th, 1892, trial was begun resulting in a verdict for plaintiff in the sum of $1,000. Defendant moved the court below for a new trial, on various grounds, which was overruled, final judgment entered, and defendant entered his appeal therefrom prior to the adoption of the Revised Statutes.

The other facts in the case are stated in the opinion of the court.

J. S. White, for Appellant.

No appearance for Appellee.

CARTER, J. (after stating the facts):

On the trial plaintiff offered in evidence the contract, a copy of which is given in full in the statement of facts, which was objected to by defendant upon the ground that "it is not the contract sued on; the contract offered in evidence having a restriction in it as to the amount of money to be furnished by the defendant, while the contract sued upon has not." It was admitted in evidence, whereupon defendant moved to strike it out because "it purports to be a contract between Jacob Bucki and Charles L. Bucki and Max Seitz, and not a contract between Max Seitz and.

Charles L. Bucki," which motion was overruled. These rulings were excepted to, and are assigned as error. It appears from the record that the contract referred to was executed in triplicate, one of which was held by plaintiff, one by defendant, the other by Jacob D. Buckey. During the progress of the trial the defendant offered his copy of the contract, and it was read in evidence without objection. As this contract was in the same language as the one complained of, we fail to see where the defendant was injured, even if the court erred in overruling his objections and motion to strike. Indeed the very clause in the contract upon which the objection to its introduction was based was beneficial to defendant as tending to prove his third and fourth pleas. A new trial will not be granted for the admission of illegal evidence to prove a fact which is fully established by other and legal evidence in the cause, it being clear that the verdict was not influenced thereby. Tilly vs. State, 21 Fla. 242; Pensacola & Atlantic R. R. Co. vs. Anderson & Peck, 26 Fla. 425, 8 South. Rep. 127; Tischler vs. Apple & Finley, 30 Fla. 132, 11 South. Rep. 273; Roof vs. Chattanooga Wood Split Pulley Co., 36 Fla. 284, 18 South Rep. 597.

Several assignments of error are based upon rulings of the court admitting evidence objected to. We do not deem it necessary to consider these assignments, as the judgment must be reversed on other grounds, and the questions involved will not necessarily arise on another trial. It is doubtful if these exceptions can be considered, because the bill of exceptions does not show which party excepted to the rulings. The objections and exceptions appear in this form: "Objection" (stating the grounds); "objection overruled,

exception noted." Who made the objection and asked for an exception to be noted is not stated, but we are left to infer that such objections were made and exceptions taken by the appellant. The rule in force at the time this bill of exceptions was made up prescribed a form to be followed, which, if adhered to, would have left no doubt of the sufficiency of the exceptions. Common Law Rule 103.

The first assignment of error is based upon the refusal of the court to grant a new trial. This motion embraces several grounds, but as appellant argues only one of them, *viz:* The verdict was contrary to law and the weight of the evidence, we will consider that one only, and treat all others as abandoned. The plaintiff bases his suit upon a written contract entered into between him and the defendant, and, in obedience to Common Law Rule 14, filed with the declaration this written contract. The declaration alleged an agreement on the part of defendant to furnish *all* requisite capital, implements, machinery and labor to carry on the business of mining; and the only breach of the contract alleged in the declaration was that about August 30th, 1891, defendant interrupted and prevented plaintiff from further prosecution of the business of mining, and declined to furnish any more capital or implements to carry on the business, although defendant was entirely satisfied with the quantity and quality of the phosphate mined. It is true there was no plea to the declaration equivalent to the general issue, because the first plea was inapplicable to this action (Bucki vs. McKinnon, 37 Fla. 391, 20 South Rep. 540), and the second plea was in denial only of the alleged breach of the contract; but the third and fourth pleas of defendant alleged that he

had furnished the necessary lands, and also capital, tools and implements to the amount of $2,500, which sum was by the contract, it was alleged, all that defendant was to furnish to prepare the first cargo of phosphate for shipment, and that such cargo had not been prepared by plaintiff. Upon these pleas issue was joined, and of course the only question submitted to the jury under them was as to whether they were true. The first matter offered in evidence by plaintiff was the written contract containing a clause limiting defendant's obligation to furnish capital, tools, machinery and labor "to the sum of ($2,500) twenty-five hundred dollars, which sum is to prepare and ship first cargo" of phosphate. Plaintiff's declaration expressly admitted that the work was stopped by defendant "before any of the phosphate had been shipped or any had been prepared for market," and it was nowhere denied in the evidence that when the work was stopped by defendant he had furnished over $2,500; and he testifies that he had at that time furnished something over fifty-five hundred dollars. This being the status of the pleadings and evidence when the case was submitted to the jury, they were not justified in finding a verdict for the plaintiff.

The plaintiff on the trial introduced evidence tending to show that according to an oral agreement between him and the defendant there was no limitation upon the amount of capital, machinery, etc., to be furnished by the defendant, and that the limitation embraced in the words italicised in the contract set forth in the statement of facts was inserted by the defendant subsequent to the time the contract was signed by plaintiff, and that plaintiff never agreed to abide by such limitation, and immediately notfied de-

fendant of that fact as soon as he discovered the clause in the contract. The evidence shows that the parties made an oral agreement at Ellaville, in Suwannee county; that shortly afterwards they met in an attorney's office in Jacksonville; that defendant explained to the attorney the nature of the contract to be drawn;. that it was understood that plaintiff would sign the contract in triplicate when prepared, and the contract was then to be forwarded to defendant in New York, whither he was then bound, for his signature; that the contracts were drawn by the attorney and signed by plaintiff in the form given in the statement of facts, except that the words "up to the sum of ($2,500) twenty-five hundred dollars, which sum is to prepare and ship first cargo," were not contained therein; that the contracts after being signed were (presumably) by the attorney who prepared them forwarded to defendant in New York; that before signing them defendant inserted the words quoted in each of the contracts, and between June 20 and July 5, 1891, delivered one copy of the contract in that shape to plaintiff; that plaintiff did not then read the contract over, nor afterwards until he was prevented by defendant from continuing his mining operations; that he then immediately notified defendant that he did not agree to this alteration and repudiated same. There is some conflict in the evidence as to whether the oral agreement embraced the limitation referred to, but even if it did it can not avail the plaintiff in this suit, because he has not declared upon the oral agreement, but seeks to hold defendant upon the written one. The defendant had a right to insert any clause he pleased in the written agreement before he signed or delivered it, for,

until it was signed by him and delivered, it was not his contract. The contract as originally signed by plaintiff was no more than a proposal, and, in order to become binding upon defendant, must have been signed by him. When he subsequently inserted other stipulations in the contract, and signed and delivered same to plaintiff, this was tantamount to a rejection of plaintiff's proposal and the making of a counter proposition. Robertson vs. Tapley, 48 Mo. App. 239. It may be that by adding to the contract after it was signed by plaintiff the plaintiff was thereby released, but if the defendant can be held at all upon the written contract, his liability must be determined by its provisions at the time of its execution by him, unless such provisions are afterwards legally waived or modified, of which there is no evidence in this record.

There was no effort made by plaintiff to prove any oral contract until after defendant had offered evidence that the original oral agreement included a provision limiting his liability similar to the one in the written contract. Plaintiff then offered evidence in rebuttal to show that something had been said in the negotiations previous to the drawing of the written contract about the cost of mining the first cargo not exceeding $2,500, but that when the terms of the contract were given to the attorney for the purpose of enabling him to prepare it nothing was said about this, and that no such stipulation was in the written contract when plaintiff signed it. The declaration was perhaps broad enough to admit evidence of the oral contract as a basis for recovery, but having filed the written contract with his declaration, offered it in evidence, made no attempt to prove any other contract except in rebuttal, the plaintiff must recover, if at all,

on the written contract, because for the purposes of
that particular trial at least he elected to stand upon
it. This being true, he could not recover upon the
theory of an oral contract different from the written
one, however satisfactorily proven. Wilkinson vs.
Pensacola & Atlantic R. R. Co., 35 Fla. 82, 17 South.
Rep. 71.

For the reasons given the judgment of the court
below is reversed and a new trial awarded.