GEORGE B. BRUCE, APPELLANT, v. THE SEABOARD AIR LINE RAILWAY, A CORPORATION, APPELLEE.

DEDICATION—ABSOLUTE AND FINAL DEDICATION CAN' ONLY BE MADE BY OWNER OF ABSOLUTE FEE—DEDICATION CANNOT BE MADE OF LANDS IN ADVERSE POSSESSION OF ANOTHER.

1. Only the owner of an absolute fee can make an absolute and final dedication of land to a public use, for streets, &c.

2. A party claiming title to land that is in the actual adverse possession and occupancy of another, cannot, as against such adverse occupant, make an absolute and final dedication of such land to a public use by the filing and public record of a map subdividing the part thereof held adversely into streets, lots and blocks, and by selling other parts thereof not held adversely to other parties by reference to such map.

3. Where a railroad company tortiously builds its road, depot buildings, etc., on land owned by C. and subsequently to the establishment of such road, buildings, etc., C. sells and conveys the land to H. the latter cannot recover of such railroad company damages for the tort, but the right of action therefor remains alone in C.

This case was decided by Division B.

Appeal from the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the Court.

*Macfarlane & Glen,* for Appellant;

*Geo. P. Raney* and *P. O. Knight,* for Appellee.

TAYLOR, J.: The appellant as complainant below filed his bill in equity in the Circuit Court for Hillsborough county against the appellee as defendant below to restrain and enjoin it from closing up or blocking up an alleged street called Florida Avenue, in one of the additions to the City of Tampa, with its depot buildings, or by permitting its trains of cars from standing across said avenue. The defendant fully answered the bill, replication was filed, and the cause submitted upon the bill, answer and an agreed statement of facts. Final decree was rendered adjudging the equities to be with the defendant, and dismissing the bill at the cost of the complainant. From this decree the complainant appeals to this court.

The facts of the case as disclosed by the bill, answer and agreed statement of fact are as follows: Prior to the year A. D. 1884, Lot 9 of Section 24, Township 29 South in Range 18 East, adjacent to the town of Tampa, in Hillsborough County, was the public property of the United States, held in reserve by it for military purposes. During the year 1884 the reservation was removed, and the land thrown open to homestead entry by the Interior Department of the Federal Government. During the year 1884 Lizzie W. Carew made homestead entry upon said Lot 9 through the United States District Land Office. The defendant railway company is the successor in title and interest of its predecessor, The Florida Central and Peninsular Railroad Company. Said last named railroad company in the spring of the year 1890, while said Lot 9 was

occupied by Lizzie W. Carew under her homestead entry thereof, built the extension of its road from Plant City across said Lot 9 and erected thereon its depot, platforms and side tracks without any objection or protest whatsoever on the part of the homestead occupant Lizzie W. Carew, and said railroad company and its successor, the defendant herein, has continuously since that time to the present occupied that part of said Lot 9 that it first located upon with its track, sidings, depot and platforms as its Tampa terminal. Prior to the issuance of the patent by the United States to Lizzie W. Carew for the said land embraced in her homestead entry, the defendant's predecessor, the Florida Central and Peninsular Railroad Company, made serious contention before the Interior Department of the United States that it was entitled, under the laws of Congress, and under a map showing the definite location of its line of road across said land filed in the General Land Office of the United States, at Washington, on December 14th, 1860, to its right of way across the same, and that its claim to such right of way was paramount to the homestead rights of said Lizzie W. Carew, and that said right of way should be reserved and excepted in the patent to be issued to said Lizzie W. Carew, but that it was decided by the Interior Department not to make any reservation or exception in said patent for the reason that whatever prior rights the said railroad company had therein would not be affected by the patent covering all the land embraced in the homestead entry of Lizzie W. Carew. Patent issued from the United States on July 30th, 1896, to Lizzie W. Carew for the said Lot 9 as embraced in her homestead entry thereof. Lizzie W. Carew on May 20th, 1896, conveyed by deed to W. W. Hampton a portion of said Lot 9 that embraced the

railroad tracks, depot, sidings and platforms of the defendant railway company, and generally all of the premises in controversy herein. W. W. Hampton on July 27th, 1899, had the portion of said Lot 9 that had been conveyed to him surveyed, subdivided and platted into blocks, lots, streets and alleys, and on that date caused a map of such subdivision to be filed and recorded in the public records of Hillsborough County, a portion of which map, sufficient to show the premises in dispute, is as follows:

By reference to this map W. W. Hampton on April 12th, 1902, conveyed Lot 6 of Block 95 as delineated on said map, abutting on and bounded by what is designated on said map as "Florida Avenue," to the complainant, and at sundry times sold divers other lots by reference to said map to divers other persons. When the defendant railroad in 1890 first located and established its road bed, sidings, &c., across said Lot 9, it located the same on the territory designated on said map as Lot 5 of Block 95, and from thence across what is on said map designated as "Florida Avenue" on and across Lot 5 of Block 94, and then established its depot, platforms, &c., across said Florida Avenue between Lot 1 of Block 94 and Lot 4 of Block 95, and has continuously occupied said ground with its tracks, sidings, depot, platforms, &c., from that time to the present. The City of Tampa, through its Council, expressly declined to accept said "Florida Avenue" as designated on said map as and for a street of said city and expressly repudiated it as such, and did nothing in recognition of it as being a street or highway of said city. During the year 1897, W. W. Hampton instituted suits in the Circuit Court of Hillsborough County against the Florida Central and Peninsular R. R. Company, the predecessor in interest of the defendant, to recover possession of all the lands occupied by it in Blocks 94 and 95 as designated on said map and in said Florida Avenue, which suits were defended and litigated until August 1903, when all of the matters in dispute were settled between the parties, in which settlement W. W. Hampton conveyed to the defendant company Lots 1, 2, 3, 4, and 5 of Block 94 by reference to said map, and executed a quitclaim deed to that portion of the territory designated on

said map as Florida Avenue. that lies between Lots 1 and 5 of Block 94, and Lots 4 and 5 of Block 95. On the 13th of July, 1904, the City of Tampa, through its proper officials, also executed to the defendant company a quit-claim deed to the said last described portion of Florida Avenue. At the time of the filing of the bill herein, October 12th, 1904, the wooden depot.building of the defendant, that had theretofore occupied that portion of Florida Avenue, as shown on said map, intervening between Lot 1 of Block 94 and Lot 4 of Block 95, had been removed by the defendant company for the purpose of constructing in its place and stead a more substantial, commodious and handsomer depot building of brick. The erection of this brick building is what the complainant protests against in his bill as being an obstruction to Florida Avenue on which his Lot 6 abuts. The chief contention of the complainant is that the filing and public record of said plat by W. W. Hampton, his grantor, was a dedication of said Florida Avenue to the public as and for a street and public highway, and that the sale and conveyance to him of Lot 6 by reference to said plat abutting upon said Florida Avenue gave to him a particular interest in said avenue, and the right to have it unobstructed by the depot buildings and trains of cars of the defendant company.

Under the facts as stated and agreed upon we think the court below made the proper decree, dismissing the bill, and we think so for the following reasons:  At the time of the subdivision and platting of the premises in dispute by W. W. Hampton and the alleged consequent dedication by him of Florida Avenue as and for a street, the defendant railway company and its predecessor in interest was in the actual adverse occupancy and possession of the territory delineated on said map as Florida Avenue,

occupying the same with its railroad tracks, depot build-
ing and platforms, and had so occupied the same for many
years, since 1890. This adverse holding by the defendant
company was contested by W. W. Hampton by litiga-
tion in the courts for many years resulting finally in an
amicable settlement by which Hampton conveyed all the
lots involved in the litigation and made a quit-claim deed
to that part of Florida Avenue that was then and had been
for years, occupied by the defendant company with its
tracks, depot building, platforms and sidings. Under these
circumstances W. W. Hampton could not at the time of
the filing and record of his map make an absolute and
final dedication for street purposes of that part of Florida
Avenue then held and occupied adversely to him and all
the world by the defendant company, for the reason that
an absolute and final dedication of lands to a public use,
can only be made by the owner of an absolute fee. Ward
v. Davis, 3 Sandf. (N. Y.) 502; City of Hannibal v. Heirs
& Adm'r of Draper, 36 Mo. 332; McShane v. City of
Moberly, 79 Mo. 41; City of Sarcoxie v. Wild, 64 Mo. App.
403; Ogle v. Philadelphia, W. & B. R. R. Co., 3 Houst.
(Del.) 302. It can make no difference so far as the com-
plainant herein is concerned whether or not the original
occupancy of the premises by the defendant railway com-
pany was a trespass or wrongful. At that time he, the
complainant, had no interest in the premises and was not
concerned therein. If it was a wrongful trespass no one
was concerned therein or injured thereby but Lizzie W.
Carew and her grantee W. W. Hampton, and the defendant
railway, while still maintaining its adverse occupancy and
possession of the premises, subsequently settled all dis-
putes and contentions over its holdings with the only per-
son having a right to contest the same, by taking quit-

claim deeds from such person, thereby ripening its former adverse possession, whether tortious or not, into a lawful and undisputed title. If its original possession was tortious the complainant has no redress therefor as against the defendant company, because he became the owner of part of the premises subsequently to the commission of the tort, and he purchased with full knowledge of the status of affairs in the *locus in quo*. Yellow River R. Co. v. Harris, 35 Fla. 385, 17 South. Rep. 568; Pensacola & Atlantic R. R. Co. v. Jackson, 21 Fla. 146.

W. W. Hampton was made a party defendant to the bill along with the defendant railway company, but the bill prays no relief against him. He answered the bill disclaiming any interest in either the subject matter of the suit or in the controversy between the parties. The decree appealed from, though it finds the equities to be in favor of the defendants generally, adjudges nothing either for or against W. W. Hampton.

The decree appealed from is hereby affirmed at the cost of the appellant.

HOCKER and PARKHILL, J. J., concur;

SHACKLEFORD, C. J. and COCKRELL and WHITFIELD, JJ., concur in the opinion.