JAMES C. DAVIS, AS AGENT OF THE PRESIDENT OF THE UNITED STATES, DIRECTOR-GENERAL OF RAILROADS, *Plaintiff in Error,* v. C. B. IVEY AND E. S. ESTES, *Defendants in Error.*

En Banc.

Opinion Filed March 5, 1927.

1. The charges requested by the defendant and given by the Court appear to present a very full statement of the issues, but these charges do not contain the only statements of the issues given in the charge to the jury. The charge was full, clear and comprehensive and we have been unable to find any reversible error committed by the Court, either in the giving of the charge or in the refusal to give other charges requested.

2. We do not mean to say evidence of the interest, bias, prejudice or motives of a witness can only be shown after a predicate laid by cross-examination of the witness as to the facts sought to be proven, but if the purpose of such evidence is to impeach the adverse witness then it must be based upon such a predicate and the evidence offered must

be of that character which is the best evidence of the facts sought to be proven. If the evidence is offered only for the purpose of showing interest of a witness and the best evidence of such fact is offered at the proper time and place of the trial it would be error for the Court to refuse to admit such evidence.

3. If the plaintiff offered a witness in presenting his case in chief and the defendant wishes to show the interest of that witness he may either show the interest by cross-examination of the witness or in his evidence in chief. So if the plaintiff offers a witness in rebuttal it is proper to show the interest of that witness by evidence in sur-rebuttal, if proper evidence of such interest is offered. It is, however, within the discretion of the trial court to allow or refuse evidence in sur-rebuttal tending to show the interest of an adverse witness whose testimony was given in the presentation of the case in chief, because there must be a limit fixed at some place where the recalling of witnesses will be stopped.

4. Assignments of Error 50 to 53, inclusive, and 86 to 120, inclusive, are based upon the action of the Court in confining the testimony in regard to water conditions and rainfall to an arbitrary area included within a circle having the *locus in quo* as a center and having a fifteen mile radius, and refusing to permit the defendant to offer any evidence concerning weather conditions outside the area. It became the duty of the Court to fix some limit as to the area which should be covered by testimony in regard to water, rainfall and weather conditions and to fix the limits of such area so that any evidence touching same would have some logical and reasonable bearing upon conditions as they would be found to exist at the *locus in quo*. It seems to us that the trial judge was not unreasonable in fixing the limits of this area in the manner stated, and that he exercised no abuse of discretion, and the counsel has cited no authority in support of his contention that in limiting the area as limited by the Court an abuse of discretion occurred.

5. While it is true that no human agency can prevent or stay an act of God, the act itself being that of omnipotence, and irresistible, it is frequently the case that the results which

are natural consequences of an act of God by the exercise of reasonable foresight and prudence may be foreseen and guarded against. Where this can be done by the exercise of reasonable diligence and prudence a failure to do so would be negligence and subject the party upon whom this duty devolved to damages, although the original cause was an act of God.

6. The principle clearly is that although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred and it may be at irregular intervals, it is to be foreseen that it will occur again and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it. It is within the knowledge of all who have resided long in this State that our streams are occasionally subject after intervals, which are sometimes of shorter and sometimes of longer duration, to great floods occasioned by very heavy rainfalls and their heights are known by those who have felt interest in them. Such rainfalls were not usual and ordinary, but they were unusual and beyond ordinary, i. e., they were extra-ordinary; and yet, it is just as certain that like rainfall will occur in the future as it is that the same laws of nature by which they are produced and the same conditions to be affected by these laws will continue to exist in the future as they have in the past. Though of rare occurrence, such rainfalls are not phenomenal and therefore beyond reasonable anticipation and hence it ls but the prudence that a discreet man would exercise in his own affairs to provide against injury from them. The question then is not whether appellant has sufficiently provided for the escape of the water of ordinary floods, but has it provided for the escape of water of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally occurred after intervals though of irregular duration in the past."

7. Where on the evidence adduced there is room for a difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded

facts, the Court should submit the case to the jury for their finding, as it is their conclusion in such cases, that should prevail, and not primarily the views of the Judge.

8. All fair intendments consistent with the record should be indulged in favor of a verdict that is responsive to the issues made by the pleadings.

9. Objections to the form of the verdict should be made before the jury is discharged.

10. The record in the cause may be resorted to in aid of a verdict, and when such record makes the verdict certain in every respect it is sufficient.

11. In verdicts, in designating the parties, the use of the singular for the plural, or *vice versa,* will not amount to a variance between the verdict and judgment where it is evidently a mistake and does not cast obscurity upon the decision.

12. A new trial should not be granted for excessive · damages unless the amount is such as to shock the judicial conconscience or to indicate that the jury must have been influenced unduly by passion or prejudice.

13. A new trial should not be granted where the relevant testimony duly sustains the verdict, though some irrelevant testimony has been admitted.

14. A new trial will not be granted because of the admission of illegal evidence to prove a fact which was fully established by legal evidence, it being clear that the verdict was not influenced thereby.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Affirmed.

*Robert H. Anderson* and *Stafford Caldwell,* for Plaintiff in Error;

*A. H. & Roswell King* and *Evan Evans,* for Defendants in Error.

BUFORD, J.—In this case suit was prosecuted by the defendants in error against the plaintiff in error. We shall refer to the defendants in error as the plaintiffs and to the plaintiff in error as the defendant. The suit involved damage alleged to have been caused by the construction of the road-bed of the F. E. C. Ry. Counsel for the defendants in error in their brief have made a clear and concise statement of the facts of the case as they may be reasonably gathered from substantial evidence contained in the record, which statement being so supported we adopt and quote:

The railroad company built its road-bed, its embankment, above the level of the land for a distance of some two miles north and extended down to the plaintiff's potato farm and on beside and beyond his farm for a mile; in all, for a distance of some three miles, and in this distance had provided only one culvert under its tracks, say seven feet long and a few inches deep in the clear, this only one thousand to twelve hundred feet from where the Dixie Highway crosses the railroad tracks; and two terra cotta pipes at Elkton, opposite plaintiff's farm, through which pipes the water came from west to east and on plaintiff's farm.

Along the east side of this embankment a ditch was cut throughout this entire distance deepening it to some five or six feet deep and widening it to some fifteen or eighteen feet broad at about plaintiff's farm, and then shallowing the ditch and narrowing it a short distance below his farm to some two feet deep and four or five feet broad.

This embankment and this ditch were made upon, over and across a number of swamps and ponds. The photographs introduced in evidence show the cypress swamps and ponds and the rising ground forming ridges in between

them.   These ponds and swamps are connected with other ponds and swamps, forming "Strands," as is well known to all hunters, cattlemen and woodsmen in Florida. These swamps, ponds and strands form the natural water courses for over and from large areas of land, and their caurse is from southeast to northwest across the line of the railroad and entirely north and east of plaintiff's farm.

All waters from said area in their natural course, shed and direction ran around and northeast and eastward beyond plaintiff's farm into the St. Johns River and its tributaries, and were held to these water courses by ridges between them.

These water courses were dammed up and the waters impounded by the railroad embankment, and these ridges were cut through by the said ditch, whereby the waters were prevented from flowing in their natural course and were diverted and forced down upon plaintiff's farm, thereby at said time making a lake on his farm, and injured and destroyed his potato crop.

On this fatal occasion the waters were impounded by said railroad embankment until they were backed up throughout said distance from one to two feet higher on the plaintiff's side (the east side) of the railroad than on the opposite side of the railroad, and were thereby banked up and held up on plaintiff's farm so long that his crop was injured or destroyed.

Plaintiff produced on a small area of some two acres of his farm, not replanted, that was least injured 65 barrels of potatoes to the acre; on 14 acres not replanted an average of 44 barrels, and on 28 acres replanted an average of 22½ barrels.

His entire crop was fine up to this time, the season for cropping was of the best up to this time, and continued so after this time throughout the potato season.   This farm

was of the best for growing potatoes, and had been for years, and had produced an average all over this farm in former years of from 25 to 100 barrels of potatoes to the acre. Solano's potato farm, nearest to plaintiff's crop and similar to it in every particular, just across the railroad embankment, produced that year, 1920, 84 barrels per acre on nine acres, and this land was of a lower elevation than plaintiff's farm.

In 1919 there had been similar flood conditions during the potato cropping season, and potato crops at this place had been injured as alleged in suits brought therefor against the railroad company by the same wrong of defendant, and the company had settled such suits in 1919, by reason whereof such flood conditions were to be anticipated and were not unprecedented. The waters rose to the same height in 1919 as in 1920. The weather reports introduced by defendant show that in March, 1919, in 24 hours there was a rainfall on the Florida East Coast of 9.04 inches, "and that the distance inland covered by the storm did not exceed apparently eight or ten miles." The weather report for February, 1920, show the following 24 hour amounts of rainfall: On February 1, Federal Point (some five miles distant and the nearest weather station to plaintiff's farm), 4.68; Jacksonville, 2.82; St. Augustine, 8.40; Satsuma Heights, 3.10; Switzerland, .00; on February 2nd, Federal Point, 5.07; Jacksonville, 3.68; St. Augustine, 9.30; Satsuma Heights, 4.00; Switzerland, 2.42; totals for the two days Federal Point, 9.75; Jacksonville, 6.50; St. Augustine, 17.70; Satsuma Heights, 7.10; Switzerland, 2.42; and total for the month at Federal Point, 13.52, while defendant's exhibit H shows rainfall at Federal Point for one month in 1897, 17.30. There was a conflict in the evidence of plaintiffs and defendant as to whether the waters dammed up by defendant's embankment flowed

to that point through natural water ways and also as to whether there was more water in 1920 than in any previous year, at least to the extent that the water and water fall created an unprecedented condition.

## PLEADINGS.

· The declaration in five counts alleged that "by the erection of said embankment defendant directed and diverted the waters flowing off a large area from the natural course, and forced said waters southward down along the said embankment of said railroad track in large quantities and thereby caused said waters to flow upon and over said land; * * * that plaintiff had growing crops of irish potatoes on said land, and that said crops were injured and damaged by the wrong of defendant in the premises alleged"; "that defendant dug and made a ditch * * * down along the side of said embankment throughout * * * by reason of which ditch defendant caused the water to flow down along the side of said embankment to said property, and thereby forced said waters to flow over and upon the said land"; "gradually widened and deepened the same and continued to widen and deepen the same until it made said ditch twelve to eighteen feet broad and eight feet deep at a point opposite * * * said land and from this point * * * made said ditch gradually narrower and shallower until said ditch was made four to six feet wide and three feet deep, and by reason of so constructing said ditch, said water was caused and forced to flow down upon and over said land"; "dug said ditch through a number of ponds and swamps and thereby gathered and took the waters from said swamps and thereby drew the waters therefrom and from large areas surrounding and contiguous thereto and thereby forced and caused said waters to flow upon and over said land"; "that connected with said ponds and

swamps there were other ponds and swamps, which formed strands, drains and gutters extending and continuing for long distances easterly from said embankment, which strands, drains and gutters formed the natural waterways and courses over a large area, and by reason of the construction of said embankment and ditch the waters from said ponds and swamps were diverted and forced down over plaintiff's land.'' Each count embraced all preceding counts in its allegations.

On September 6th, 1920, defendant Florida East Coast Railway Company filed a paper relating the fact of government control at the time of the injury and asked that the Director General be substituted as defendant.

On September 25th, 1920, the Director General filed demurrer and motion to strike the declaration, which were overruled and denied on October 14th. This appears by the record on the former writ of error in this cause. 83 Fla. 436.

On September 28th, 1920, the Court granted said motion for substitution of the Director General for the Flordia East Coast Railway Company. (Note: this after the Director General had filed said demurrer and motion.)

On October 16th, 1920 (36 days after filing said petition for substitution and 21 days after filing demurrer and motion by Director General, and after the demurrer and motion to strike filed by the Director General, directed to the declaration had been over-ruled and denied), a plea in abatement was filed by the Director General for that this suit should be prosecuted in another county than Duval, where it was pending, it being alleged that the cause of action occured in St. Johns County, and that the Director General lived in Washington, D. C., and not in Duval County, Florida. It was not alleged in the plea that the plaintiffs did not reside in Duval County, Florida. On the same day, October 16th, 1920, the Director General,

as defendant, also filed 21 pleas to the merits. On November 10th, 1920, demurrer to the plea in abatement was filed, and sustained on January 17th, 1921.

On November 11th, 1920, demurrer to and motion to strike pleas were filed and on Feburary 11th, 1921, said demurrer and motion to strike were granted and sustained in part.

Amendment to declaration was filed without objection on March 31st, 1921, claiming additional damages for loss of fertilizer, seed potatoes, labor and material in the cultivation of said crop.

Verdict and judgment for plaintiffs, April 7th, 1921, for $19,800.00. On writ of error to this Court this judgement was reversed, Payne v. Ivey, 83 Fla. 436, 93 Sou. 143, et seq. A new trial was had, and verdict and judgment rendered for the plaintiff in the sum of $8,288.00, from which this writ of error is taken.

Counsel for the plaintiff in error filed 160 assignments of error. Many of the assignments are repetitions of the objections presented by other assignments and in many instances the identical points of law are raised by several different assignments of error. Realizing this fact, Counsel has, to a great extent, assisted the Court in the study of the case and in arriving at its conclusions by grouping of the assignments of error in 22 groups. The questions pre-. sented will be disposed of under such grouping and in the order presented on brief.

The 153rd assignment of error is: ''The Court erred in sustaining the demurrer of plaintiffs to defendant's plea in abatement.'' This same question was presented to this Court in this case upon former hearing and was there disposed of and thereby the disposition of that question, in so far as this case is concerned, became the law of the case and is settled against the contentions of the plaintiff

in error. See the grounds of the motion. Payne v. Ivey, 83 Fla. 436, 93 Sou. 143.

Assignments 3, 4 and 6 are addressed to the alleged failure of the Court to fully charge the jury upon the issues. The Court charged the jury, at request of the defendant, as follows:

"3. The plaintiffs in this case allege in their declaration that they owned certain land near Elkton, Florida, which they had planted in Irish potatoes and that the defendant constructed a railway embankment and thereby cut-off, obstructed and prevented the water from flowing away from their land in its natural course, and by the erection of such embankment, diverted waters flowing off a large area from their natural course and forced them Southward down along the embankment and thereby caused the waters to flow upon and over their lands, causing certain specified damages. The defendant says he is not guilty, which means that he denies that he committed the alleged wrongful act—that is, cutting off, obstructing and preventing such waters from flowing in their natural course and diverting them therefrom and forcing them upon plaintiffs' lands, thereby doing the damage alleged. On this issue the plaintiffs to recover must prove to you by a preponderance of the evidence, not only that defendant obstructed the water course and diverted the waters and forced them upon plaintiffs' lands, but also that such was the proximate cause of their damage, and must also prove the amount of their damage done by this cause.

4. In their second count the plaintiffs not only complain of the acts alleged in the first count, but also aver that defendant dug a ditch on the east side of the embankment from Nine Mile Crossing to their property by means of which defendant caused the waters to flow down alongside of the embankment to plaintiffs' property and there-

by forced them over plaintiffs' lands, doing certain speci-
fied damages. The defendant, to this count, likewise, says
he is not guilty, which means, as I have said before, that
he denies that he committed the alleged wrongful act—
that is, that he dug the ditch on the east side of the rail-
road from Nine Mile Crossing to plaintiffs' lands by means
of which the water was diverted upon plaintiffs' fields
doing the damage alleged. As in the case of the first count,
the plaintiffs to recover, must prove under this count that
the defendant dug the ditch as alleged and also that it
thereby diverted the waters and cast them on their lands,
and also the amount of their damage done by this cause.

5.   Plaintiffs' third count is similar to their second, but
also complain that on account of the manner of the con-
struction of the ditch, that is, by its widening and nar-
rowing and shallowing and deepening, the waters were
cast upon their field. As in the previous instructions, the
plaintiffs to recover must prove by a preponderance of
the evidence that this alleged act was done by defendant
in the manner alleged in the count and that so doing was
the proximate cause of plaintiffs' damages, and plaintiffs
must prove the amount of the damage so caused.

6.   The fourth and fifth counts of the declaration are
substantially the same. They complain of the digging of
the ditch through a number of ponds and swamps and the
draining of the waters therefrom and carrying them on to
plaintiffs' lands and thereby doing certain damage. To
entitle them to recover on such counts, plaintiffs must
prove by a preponderance of the evidence that defendant
committed these alleged wrongful acts and that they there-
by proximately caused the damages suffered, and also the
amount of the damage so caused.

7.   The substance of the plaintiffs' complaint in all of
the counts is that the railroad, either by means of the

embankment or the ditch, or both, obstructed natural water courses and diverted the waters from the direction in which nature provided for their flow and cast them upon plaintiffs' lands. I therefore, charge you that for the plaintiffs to recover you must first find from a preponderance of the evidence that there were natural waterways between the so-called Nine Mile Crossing and Elkton running in a generally westerly or northwesterly direction, and second, that the railroad, in constructing the embankment or ditch, or both, failed to provide proper and sufficient outlets for the waters naturally running in such natural water courses, and that such waters were thereby diverted in a southerly direction; and third, that they were by reason thereof cast onto plaintiffs' fields and thereby did the damage alleged, and, lastly, the amount of such damages.

8. In the foregoing charges I have used the expression that, if the defendant committed the alleged wrongful acts charged and such acts were the proximate cause of plaintiffs' injuries the defendant is liable. By the words 'proximate cause' I mean that act which in the natural sequence of events produced the injury complained of without the intervention of any other independent, efficient cause.

9. In the construction of embankments and the digging of ditches upon its property, the railroad was only required to use its property so as to needlessly or unduly injure others, including adjoining land-owners. In such cases the rule is that ordinary care is required, or such care as ordinarily a person of average prudence would give the matter under the circumstances where his own right and the rights of others are involved. If you find from the testimony that in the building of its embankments and the digging of its ditches the railroad did use such care, then it would not be liable for injuries to adjoining land-

owners, such as the plaintiffs, and you should find a verdict for the defendant.

10.   In the construction of its railroad the railroad had a perfect right to lay its tracks upon an embankment and to fill in and build up the same if it was reasonably necessary or proper to do so, and it had a perfect right to lay its track and build an embankment through low, marshy or swampy country. It had no right to obstruct natural water courses, and, if it was necessary to build the embankment over natural water courses, the railroad was required to provide a sufficient opening for such waters as might reasonably be expected to flow through such natural water courses. It was not required to provide opening at all low, wet, swampy or depressed places which were not natural water courses, nor was it required to provide openings at the natural water course for unprecedented and unanticipated floods. So, if you find from the evidence that the railroad used ordinary care to provide sufficient opening over natural water courses for such waters as might reasonably be expected to flow through and under the same, then you should find your verdict for the defendant.

13.   You are instructed that, if you find that the defendant has established or proven any one or more of his pleas by a preponderance of the evidence, you should return a verdict in favor of the defendant.

14.   A railroad is not required to provide openings under its tracks for the run-off of surface waters; but, if it provides reasonable means for carrying off the same under normal conditions and in such quantities as might reasonably be expected, it has performed its full duty to the adjoining land owners.

15.   If a railroad in the construction of its road-bed and embankment, builds it over a natural water course, it is

only required to provide an opening of sufficient capacity to properly carry off such waters as might reasonably be expected to flow through such natural water courses.

17.   A railroad is not bound to provide for an unprecedented flood, which could not have been foreseen and is required only to anticipate and make provision for such rain fall as may occur in the ordinary course of nature, and it is not guilty of negligence in failing to provide for a flood which is extraordinary or unprecedented, or could not reasonably have been foreseen.

21.   If you should find that the defendant did build the embankment and divert the natural water course and dig the ditch and thereby carry the waters in a direction other than that in which they would naturally flow, nevertheless, if the evidence shows that his so doing was not the proximate cause of plaintiffs' injury, but that notwithstanding the plaintiffs would have suffered the damage anyhow, either on account of the excessive rainfall (if there was such) or the general flood conditions (if there were such), or from any other cause, then I charge you that the defendant would not be liable for the damage suffered by the plaintiffs and you should find the defendant not guilty.

24.   If you find the defendant guilty on any count of the declaration and further find by a preponderance of the evidence that the County or Dixie Highway easterly from Nine Mile Crossing and at or near the place where said highway crosses McCullough Creek Swamp impounded a large quantity of water at the time of the injuries complained of by plaintiffs, and that said water by reason of such impounding and diversion was cast upon the country between such point on such highway and Elkton and thereby reached plaintiffs' lands and contributed to the injury, if any, suffered by plaintiffs, then you could only

find against the defendant for the amount of damages caused by him and the burden is upon the plaintiffs to establish the amount of such damage by a preponderance of the evidence.

26. The defendant has filed certain special pleas in which he alleges that the plaintiffs' damages were proximately caused by unusual and unprecedented and unanticipated rainfalls, and the Court charges you that if you find from the evidence that such was the proximate cause of plaintiffs' damages your verdict should be for the defendant.

27. A natural water course is a natural stream bed having bottom and sides in which water usually flows in a defined bed or channel. It is not essential, to constitute a natural water course, that the flowing should be uniform or uninterrupted. The other elements existing, a stream does not lose its character or cease to be a natural water course because in time of drought the flow may be diminished or temporarily suspended. It is sufficient if it is usually a stream of running water.

39. If you find for the plaintiffs under the evidence and find that they are entitled to recover damages from the defendant for either that portion of their crop which was wholly destroyed or that portion which was only partially destroyed, or both, you should give the defendant credit for such net sums as the plaintiffs subsequently realized, as shown by the evidence, from the replanting of their crops and should subtract such net sums as were realized from the replanted crop from the value of the crop that was wholly destroyed, and the damages for crop that was partially destroyed, arrived at in the manner in which I have heretofore instructed you.''

These charges so requested by the defendant and given by the Court appear to present a very full statement of

the issues, but these charges do not obtain the only statements of the issues given in the charge to the jury. The charge was full, clear and comprehensive and we have been unable to find any reversible error committed by the Court, either in the giving of the charge or in the refusal to give other charges requested.

Assignments 40 to 45, inclusive, and from 130 to 141, inclusive, are addressed to the action of the Court in excluding certain testimony proffered to be produced from the witness R. E. Williams, Deputy Clerk of the Circuit Court of Duval County, Florida, to show that certain witnesses for the plaintiff had suits pending in their own behalf against the defendant, it being contended by the defendant that this evidence would tend to show a material interest on the part of witnesses referred to in the result of the trial in which they were then testifying.

It would have been entirely proper for questions to have been propounded to such witnesses while they were on the stand to ascertain whether or not they had suits pending and if the witness had denied that such was a fact then it would have been entirely proper to have impeached the witness by the record. But when there was no predicate laid for such impeachment and when such testimony was not offered until it was attempted to be introduced in surrebuttal, we think no error was committed by the Court in refusing its admission. The best evidence of the pendency of such suits would have been the records and the evidence offered would have been inadmissible over objection upon this ground. Counsel cites the case of Bryan v. State, 41 Fla. 643, 26 Sou. 1022, in support of the contention that the evidence was admissible. In that case it appears from the opinion that one, Davis, was a witness against the defendant and had testified that he butchered the cow alleged to have been stolen at defendant's pen in the presence

of the defendant and by his direction after the defendant had been informed of the marks and brands of the animal; that he was employed by defendant to butcher cattle; that he left the county and afterwards returned. It was then proven by the witness Morrison that he, Morrison, was President of the Cattlemens Association organized in 1898 and that one of the objects of the association was to provide funds and procure presence of Davis to testify against the defendant; that then Morrison was asked the question, "Is it not true that you did provide the funds at this meeting and did procure the attendance of the witness Jim Davis to attend or come here as a witness against Gad Bryan? I mean, in a legitimate way, Mr. Morrison." The Court says: "The Court excluded the question on the objection that it was an attempt to contradict the witness Davis on an immaterial issue in the case. The objection impliedly concedes that the testimony would tend to contradict in some particular what the witness had stated." Upon this theory the Court held that evidence admissible but there is nothing in this record which either impliedly or directly shows that this evidence was offered in an effort to contradict the statement of any witness. The record further shows that such evidence as was proffered was secondary evidence and that no excuse was offered for the non-production of the best evidence of the facts sought to be proven, had such facts been admissible at that stage of the trial. We do not mean to say evidence of the interest, bias, prejudice or motives of a witness can only be shown after a predicate laid by cross-examination of the witness as to the facts sought to be proven, but if the purpose of such evidence is to impeach the adverse witness then it must be based upon such a predicate and the evidence offered must be of that character which is the best evidence of the facts sought to be proven. If the evidence is offered

only for the purpose of showing interest of a witness and the best evidence of such fact is offered at the proper time and place of the trial it would be error for the Court to refuse to admit such evidence. If the plaintiff offered a witness in presenting his case in chief and the defendant wishes to show the interest of that witness he may either show the interest by cross-examination of the witness or in his evidence in chief. So if the plaintiff offers a witness in rebuttal it is proper to show the interest of that witness by evidence in sur-rebuttal, if proper evidence of such interest is offered. It is, however, within the discretion of the trial Court to allow or refuse evidence in sur-rebuttal tending to show the interest of an adverse witness whose testimony was given in the presentation of the case in chief, because there must be a limit fixed at some place where the recalling of witnesses will be stopped.

The 46th to 49th assignment of error, inclusive, are addressed to the action of the Court in allowing counsel to use a certain map in arguing the case before the jury. Counsel has not pointed out in his brief any injury that did occur or that might have occurred by reason of reference to the map; neither is it shown that the arguments which the map may have been used to demonstrate were not supported by the evidence. Therefore, it is not possible for this Court to say that the trial judge committed a reversible error in allowing counsel for the plaintiff to use this map or plat while making his argument to the jury, the jury then being advised by the Court that the map itself was not in evidence.

Assignments 28, 31, 32, 124 and 125 are presented together. The first three of these assignments are addressed tothe refusal of the Court to give certain charges requested by the defendant and the latter two are addressed to the action of the Court in sustaining the objection of the plain-

tiff to questions propounded to witness E. S. Estes. The
charges referred to are those numbered 40, 43 and 44, which
were requested by the defendant and refused, and were
based upon the assumption that evidence showed that Dr.
Estes was not a proper party to the suit. Our inspection
of the reconrd convinces us that the plaintiffs named were
partners in the venture of producing a potato crop on cer-
tain lands; that they planted crop; that afterwards the crop
was destroyed or damaged and that they, as such partners,
instituted suit against the defendant for the damage; that
while said suit was pending Dr. Estes sold out his entire in-
terest in said crop to his partner, Mr. Ivey. Therefore, we
think the charges were properly refused.

The questions covered by these assignments of error were
irrelevant and immaterial. If this suit had been brought
for damage to the land then the principle as enunciated in
Bruce v. S. A. L. Ry., 52 Fla. 461, 41 Sou. 883, would
apply, but the suit is brought not for damage to realty but
to cover damage for loss of a growing crop and the evi-
dence is that the crop was planted by and belonged to Ivey
and Estes at the time the damage occurred.

Assignments of error 50 to 53, inclusive, and 86 to 120,
inclusive, are based upon the action of the Court in confin-
ing the testimony in regard to water conditions and rainfull
to an arbitrary area included within a circle having the
locus in quo as a center and having a fifteen-mile radius
and refusing to permit the defendant to offer any evidence
concerning weather conditions outside this area. It be-
came the duty of the Court to fix some limit as to the area
which should be covered by testimony in regard to water,
rainfall and weather conditions and to fix the limits of such
area so that any evidence touching same would have some
logical and reasonable bearing upon conditions as they
would be found to exist at the locus in quo. It seems to us

that the trial judge was not unreasonable in fixing the limits of this area in the manner stated, and that he exercised no abuse of discretion, and counsel has cited no authority in support of his contention that in limiting the area as limited by the Court an abuse of discretion occurred.

Assignments of error 84 and 121 are addressed to the Court's action in refusing to permit witnesses for the defendant to testify whether or not the farmers generally throughout the country were injured by flood conditions and if replanting of crops was thereby made necessary. These questions were objectionable because it was not shown that the other lands referred to were of the same elevation, or as high elevation, as the land upon which the crop was planted which is alleged to have been damaged by the defendant and were properly excluded.

Assignments of error 34 to 39 inclusive are based upon certain charges given by the Court, as follows:

"The Court charges you that a railroad company which leaves an opening under its tracks which is insufficient to carry the water flowing in natural water courses, is liable for whatever damages may accrue from the injury caused by a damming back of the waters upon the lands of persons in the vicinity, and the liability extends to injuries by unusual floods, but not to injuries caused by unprecedented floods."

"The Court charges you that if you find from a preponderance of the evidence that the defendant diverted the natural flow of water, which natural flow was the result of ponds and swamps being connected with other ponds and swamps which formed strands, drains or gutters extending and continuing for long distances easterly from defendant's embankment, and drained said waters from these strands, drains or gutters, and caused said waters to be forced over plaintiff's land, and that this was the proximate cause of

the injury to plaintiff's potato crop, then it is your duty to find a verdict for plaintiffs in accordance with the evidence and the further charges of the Court.

"There is a claim in the declaration for the loss of fertilizer, labor and seed potatoes. There has been evidence touching those matters. I shall leave those items to you, gentlemen, under the evidence and the general charge of the Court."

It appears to us that these charges clearly and correctly stated the principles of law involved. The Supreme Court of Alabama in Smith v. Western Ry. Co., 91 Ala. 455, 8 Sou. 754, in considering the liability of a railroad company for damages caused by a heavy flood, said: "While it is true that no human agency can prevent or stay an act of God, the act itself being that of omnipotence, and irresistible, it is frequently the case that the results which are natural consequences of an act of God by the exercise of reasonable foresight and prudence may be foreseen and guarded against. Where this can be done by the exercise of reasonable diligence and prudence a failure to do so would be negligence and subject the party upon whom this duty devolved to damages, although the original cause was an act of God."

In Ohio & M. R. Co. v. Rainey, 139 Ill. 9, 28 N. E. 1087, in a suit against the railroad company for obstructing the flow of water in a stream thereby overflowing adjoining lands in time of unusual or extraordinary flood, the Court say: "The principle clearly is that although a rainfall may be more than ordinary, yet if it be such as has occasionally occurred and it may be at irregular intervals, it is to be foreseen that it will occur again, and it is the duty of those changing or restraining the flow of water to provide against the consequences that will result from it. It is within the knowledge of all who have long resided in this State that

our streams are occasionally subject, after intervals, which are sometimes of shorter and sometimes of longer duration to great floods occasioned by very heavy rainfalls and their heights are known by those who have felt interest in them. Such rainfalls were not usual and ordinary but they were unusual and beyond ordinary, i. e., they were extraordinary; and yet, it is just as certain that like rainfalls will occur in the future as it is that the same laws of nature by which they are produced and the same conditions to be affected by these laws will continue to exist in the future as they have in the past. Though of rare occurrence, such rainfalls are not phenomenal and therefore beyond reasonable anticipation and hence it is but the prudence that a discreet man would exercise in his own affairs to provide against injury from them. The question then is not whether appellant has sufficiently provided for the escape of the water of ordinary floods, but has it provided for the escape of water of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally occurred after intervals though of irregular duration in the past." This rule finds support in Gulf C. & S. F. R. Co. v. Boyce, 39 Tex. Civil Appeals, 195, 87 S. W. 395; Hyman v. Hauff, 138 N. Y. 48, 33 N. E. 735; Wilson v. Bowie City, 20 Idaho 133, 36 L. R. A. 1158.

In Gulf Red Cedar Co. v. Walker, 132 Ala. 553, 31 Sou. 374, the Court say: ''The term '*ACT of GOD*' in its legal sense applies only to events in nature so extraordinary that the history of the climatic variations and other conditions in the particular locality affords no reasonable warning of them,'' and holds where injuries were caused by floating timber by a lumber company during a flood that damages could not be avoided on the grounds that the flood was an *act of God* where from geographical and climatic conditions

the flood might have been anticipated, although it occurred infrequently.   See also Kansas City v. King, 65 Kans. 64, 68 Pac. 1093.

Counsel urges that the charges were improper because they were not in line with the allegations of the declaration. It being charged in the declaration that the defendant built an embankment, describing it, and thereby cut off, obstructed and prevented the water from flowing away from the said lands in its natural course, and by the erection of the embankment directed and diverted the waters flowing off a large area from their natural water course, etc., but that there is no allegation in the declaration alleging an insufficiency in the openings, culverts, etc.   Under the allegations of the declaration the plaintiff introduced evidence to show that an embankment had been constructed with the result alleged in the declaration.   The defendant offered testimony to show that it had constructed the embankment at the place alleged, but that it had provided openings for the natural flow of water.   The plaintiff in rebuttal offered testimony to show that while some openings had been provided, they were insufficient to accommodate the flow of water under such conditions as existed at the time of the alleged damage.   The chief question before the jury was whether or not the defendant had exercised proper care and diligence in constructing the road-bed to reasonably guard against the resulting of such damage as was alleged to have occurred, and there can be no escape from the fact that the question of the sufficiency of the openings left was very material to this issue.   We therefore hold that the giving of the charges complained of by these assignments of error, when considered with the entire charge of the court, did not constitute reversible error.

Assignments of error 5 to 33, inclusive, are based upon the refusal of the Court to give certain charges requested by

the defendant.  A careful reading of the charges requested and refused and of the charges given by the Court discloses that no charges properly stating the law were refused which had not been fully covered by other charges given.

Counsel has grouped these assignments together and then the assignment of error No. 10 has been argued separately, as has also assignments of error Nos. 11 and 12, and also Nos. 17 to 22, inclusive; also assignments of error Nos. 24 and 25, and also No. 23; and we think the above observation is sufficient to dispose of these assignments.

Assignments of error No. 55 and No. 144 are based upon the objection of the defendant to certain testimony of one B. J. Masters and a motion to strike that testimony, which was denied.  Masters testified that he was acquainted with the land and testified to the yield of potatoes for the years 1916, 1917, 1918 and 1919.  This was the four years next preceding the year in which the crop was alleged to have been damaged and was presented for the purpose of showing the kind of crops the land is capable of producing.  The measure of damages in cases like the one at bar is stated in the authorities cited by Mr. Justice Whitfield in the opinion of the Court in this case of former hearing.  (Payne v. Ivey et al., 83 Fla. 436, 93 Sou. 143.)

The cases there cited hold the rule to be that it is proper to introduce and submit evidence showing the kind of crops the land is capable of producing in support of an action for damages alleged to have resulted to growing crops.

The assignments of error 64 to 67, inclusive, are addressed to the ruling of the Court in allowing the plaintiff, Ivey, to testify as to the yields of potatoes on the land that was not damaged, on the land that was slightly damaged and on the land that was greatly damaged.  It appears that this evidence was material and relevant as going to show what the land was reasonably capable of producing and presented

facts which would aid the jury in a legitimate way in arriving at the value of the crop at the time the damage is alleged to have occurred.

The same observation applies to assignment of error No. 146.

The 1st and the 148th assignments of error are addressed to the ruling of the Court in denying defendant's motion at the close of plaintiffs' testimony to instruct the jury to find a verdict for the defendant. We find that the plaintiff had produced sufficient evidence to warrant the Court in submitting the case to the jury. In the case of City of Jacksonville v. Glover, 69 Fla. 701, 69 Sou. 20, Mr. Justice WHITFIELD, speaking for the Court, enunciated the rule which should govern in such matters, as follows:

"Where on the evidence adduced there is room for a difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion in such cases, that should prevail, and not primarily the views of the Judge."

Assignments of error 2, 5, and 149 raised the identical question which is presented by the two assignments last disposed of, except that these assignments are addressed to a motion made at the close of *all* the testimony. The same rule of law applies and it would have been reversible error for the Court to have granted the motion.

Assignments of error Nos. 142 and 143 are addressed to the action of the Court in overruling defendant's motion for a new trial. Grounds 21 and 22 of the motion attack the sufficiency of the verdict. The verdict was as follows: "Jacksonville, Fla., June 20, 1923. We, the jury, find for the plaintiff the sum of $8,288.00 (Eight thousand, two

hundred and eighty-eight dollars) with interest from August 2nd 1920 to date. So say we all. James A. Craig, Foreman.''

In Rentz v. Live Oak Bank, 61 Fla. 403, 55 Sou. 856, the Court say: ''All fair intendments consistent with the record should be indulged in favor of a verdict that is responsive to the issues made by the pleadings.'' In Marianna Mfg. Co. v. Boone, 55 Fla. 289, 45 Sou. 754, it is held, ''Objections to the form of the verdict should be made before the jury is discharged.'' In Robinson v. State, 45 Fla. 94, 34 Sou. 294, and in O'Neal v. State, 54 Fla. 96, 44 Sou. 940, it is held that ''the record in the cause may be resorted to in aid of a verdict, and when such record makes the verdict certain in every respect it is sufficient.'' We think the verdict here presented meets this rule. It is also held, and we think properly so, that in verdicts, in designating the parties, the use of the singular for the plural, or vice versa, will not amount to a variance between the verdict and judgment where it is evidently a mistake and does not cast obscurity upon decision. (23 Cyc. 823, and cases there cited.) The rule is well established that a new trial should not be granted for excessive damages unless the amount is such as to shock the judicial conscience or to indicate that the jury must have been influenced unduly by passion or prejudice. (A. C. L. Ry. v. Whitney, 65 Fla. 72, 61 Sou. 179; S. A. L. Ry. Co. v. Callan, 75 Fla. 688, 74 Sou. 799.) (The City of Jacksonville v. Vaughn. — Fla., decided at this term of Court.)

The instant case when tried the first time resulted in a verdict in favor of the plaintiff for $19,849.23. The trial Judge refused to set aside that verdict. It is now before this Court on a verdict for $8,288.00, less than one half of the first verdict, and the trial Court has refused to set aside that verdict. We do not feel that the amount of this verdict is such as to shock the judicial conscience or is such

as to indicate that the jury must have been influenced unduly by passion or prejudice. It appears, from consideration of the whole record, that there was substantial evidence to support the allegations of the declaration. It does not appear that the plaintiff in error was made to suffer any injustice by reason of any charge given nor does it appear that any proper charge requested by the defendant which would have reasonably benefited the defendant, was refused.

In Bacon v. Green, 36 Fla. 325, 18 Sou. 870, it is held, ''A new trial should not be granted where the relevant testimony duly sustains the verdict, though some irrevelant testimony has been admitted,'' and in Tilly v. State, 21 Fla. 242, as in Bucki v. State, 39 Fla. 55, 21 Sou. 567, it is held ''A new trial will not be granted, because of the admission of illegal evidence to prove a fact which was fully established by legal evidence, it being clear that the verdict was not influenced thereby.'' See also Skinner Mfg. Co. v. Douville, 61 Fla. 429, 54 Sou. 810.

The judgment is affirmed.

Affirmed.

ELLIS, C. J., AND WHITFIELD, J., AND CAMPBELL AND LEWIS, Circuit Judges, concur.

BROWN, J., disqualified.

TERRELL AND STRUM, J. J., not participating.