73 So.2d 867 (1954)
HOTEL & RESTAURANT EMPLOYEES & BARTENDERS UNION, LOCAL NO. 339 et al.
v.
BOCA RATON CLUB, Inc.
Supreme Court of Florida. En Banc.
July 6, 1954.
*868 Lucille Snowden and George S. O'Kell, Miami, for appellants.
Burns, Middleton & Rogers, West Palm Beach, and John Moore, Delray Beach, for appellee.
HOBSON, Justice.
One of the questions before us is whether the amended bill of complaint, which was dismissed by the chancellor, states a claim upon which relief may be granted on behalf of all or any of the plaintiffs, who have elected not to take advantage of the proffered leave to amend further and are appellants here. For convenience, we shall first summarize the amended complaint because it gives a complete statement of the plaintiffs' present case, although we shall consider other questions before reaching the one above referred to.
The following allegations of fact appear from a study of the amended complaint.
Boca Raton Club, Inc., the employer, defendant-appellee herein, operates a resort hotel at Boca Raton, Florida, during the "season", which extends from about the first of December to the first of May each year. Plaintiffs are a labor union and a number of individual employees who are members of the plaintiff union and sue as employees, as union members and as individuals. The hotel operated by the employer is in an isolated location, far from other housing accommodations, and thus room and board are furnished for the employees. Living quarters and a "canteen" for employees are located behind the hotel proper and surrounded by a high fence, the only entrance or exit being through gates at which the employer's police stand at all times.
As the season progressed, grievances developed among the employees regarding wages and hours, the one grievance alleged as common to all plaintiff employees being that tips, which "make up most of the actual money earned by plaintiffs" were withheld, in whole or in part, permanently or for long periods of time, when paid by guests to the management rather than directly to plaintiffs.
"Employees in the liquor and food service department" of the defendant joined the plaintiff union. It is not clear from the complaint whether all, or indeed, any, of the plaintiff employees were members of this group, but from the declaration previously referred to that the named individual plaintiffs are suing "as members of the union" it is inferable that all plaintiff employees are allegedly members of the liquor and food service department and are union members. On February 6, 1953, the union, by letter, notified defendant's manager, Carroll, "of the employees unionization and their desire for collective bargaining". The union sent further letters to Carroll on February 14 and 26, 1953, requesting a conference and suggesting an agenda, but without reply. On February 27, 1953, the union representative telephoned Carroll and was informed that there would be no meeting or collective bargaining agreement. By secret ballot and with a majority vote, the employees of "the said department" decided to strike, and on March 4, 1953, "all the *869 employees of the catering department, except three" refused to work. The relationship between the "liquor and food service department" the "catering department" and the individual plaintiffs nowhere appears. The defendant refused to recognize the union, told the "employees (apparently the striking employees of the "catering department") that they must leave their living quarters, and that they could resign and be rehired. On March 5, 1953, the defendant issued the following notice for distribution to "said plaintiffs":
 "Important Notice
 =================
"All Dining Room and Bar Employees Not Working Are Hereby Notified to Vacate the Boca Raton Hotel and Club Premises as of Today, March 5th, 1953.
 "This Is a Final Notice
 =======================
"I Am Glad and Willing Now and Have Always Been to Discuss With Any Employee of the Boca Raton Hotel and Club Any Problem or Grievance.
 "Any Dining Room or Bar Employees
Who Wi sh to Resume Working
Will Please Communicate at Once
 ====
With Mr. James Simms, Catering Manager,
and Employment Will Be Guaranteed
Until the End of This Season.
 "James J. Carroll
 "Boca Raton Hotel & Club"
Simultaneously, at about 3:00 p.m., on March 5, defendant closed the gates to plaintiffs' living quarters, preventing plaintiffs from passing in or out, and also stationed police at the stairs leading to plaintiffs' rooms so that "plaintiffs were held prisoner wherever they happened to be". At 7:00 p.m., on the same date, plaintiffs held in the "canteen" were permitted to go to their rooms. On the following day, "plaintiffs outside the gates could not go to their rooms, and plaintiffs inside the gates could not leave, unless they accepted absolute discharge and accumulated their possessions from their rooms". The defendant then stated that it would meet with a committee consisting only of employees on the following morning, March 7, 1953, provided all employees requesting a meeting for bargaining purposes would first take their possessions and leave the premises. Plaintiffs declined this offer, and defendant informed them that they would be evicted. From midnight of March 6, 1953 to early morning of March 7, defendant caused plaintiffs "not locked out" to be arrested for criminal trespass. No regard was given to individual status, and some plaintiffs were arrested who were unable to work because of illness. At no time did plaintiffs conduct themselves in other than an orderly manner, but defendant surrounded their quarters with thirty policemen. Whether or not these plaintiffs were actually evicted does not appear from the amended complaint. "Many of the plaintiffs" were, however, fined for criminal trespass on March 10, 1953.
On March 11, 13 and 14, the picture appears to have undergone a complete change. On those dates defendant met with plaintiff union representatives and "definite agreements were entered into with plaintiff union on all phases of the labor dispute * * *." "Letter confirmation" of this agreement was sent to defendant, and plaintiffs returned to work on Sunday, March 15, 1953. Thereafter, however, defendant began to retract, i.e., breach, the agreement, according to the complaint, although no facts are set up in support of this allegation.
The above are the main factual allegations of the amended complaint, which concludes with a prayer that the court "construe the sworn allegations herein, the exhibits attached, and the testimony presented, and ascertain to what extent the defendant has committed unfair labor practices * *. That if unfair labor practices have been committed, and are being committed * * that after final hearing a permanent injunction be entered ordering said defendant to cease and desist further unfair labor practices * * * and that plaintiffs have damages * * * and that the court allow such other relief as in equity may be just."
*870 Compared with the amended complaint, the original complaint contained an abbreviated historical recital of events occurring up to the time of filing, on March 5, 1953, and the prayer for relief was substantially the same as in the amended complaint, except that in addition it asked "that if unfair labor practices are being committed by said employer, a decree to that effect be entered and the rights of the parties be set forth in said decree; that said acts of said employer which are unfair labor practices * * * be enjoined and injunction without notice be entered * * *."
A hearing was held on the prayer for temporary relief on March 6, 1953, the day following the filing of the original complaint. The chancellor was understandably perplexed at the nature of the temporary relief requested, and was informed that the injunction desired would reach the evictions or threats of eviction and the "unfair labor practices". At the outset, the court stated that it would not grant a temporary mandatory injunction to compel collective bargaining. This ruling was well within the discretion of the chancellor. Mandatory injunctions are looked upon with disfavor, especially before final hearing, and the right shown must be clear and free from reasonable doubt. Johnson v. Killian, 157 Fla. 754, 27 So.2d 345; Miami Bridge Co. v. Miami Beach Ry. Co., 152 Fla. 458, 12 So.2d 438; American Fire and Cas. Co. v. Rader, 160 Fla. 700, 36 So.2d 270.
After the hearing, in the course of which three witnesses testified for the plaintiffs and documentary evidence was received, including the "important notice" reproduced above, the chancellor on March 13, 1953, entered an order denying all temporary relief and on the same date, on motion of defendant, dismissed the original complaint for failure to state an actionable claim, granting, however, leave to amend. The amended complaint was filed on April 17, 1953.
Was it error, as appellants contend, for the chancellor to deny all temporary injunctive relief and to dismiss the original bill? We are of the opinion that each of these rulings was correct as to the plaintiff union, because the rights sought to be enforced were personal to the employees, Miami Laundry Co. v. Laundry, Linen etc., Local Union No. 935, Fla., 41 So.2d 305; Miami Water Works Local 654 v. City of Miami, 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967, but constituted error as to the plaintiff employees. To entitle the plaintiff employees to temporary relief, it was necessary that a case for such relief be not only sufficiently proved, but sufficiently pleaded as well, Hall v. Hanford, Fla., 64 So.2d 303; City of Miami Beach v. Morgan, Fla., 64 So.2d 560, and both requirements were met in this case.
The allegations of the original bill were indeed "vague and indefinite", as the chancellor observed. The prayer for relief asked for a sort of blanket declaratory decree as well as injunctive relief, and even requested that the court "construe" the complaint and the evidence. In effect, the chancellor was asked to analyze the case and rule upon anything he considered appropriate. But these improper demands could have been considered as surplusage. Indeed, both the original and the amended complaint herein are of such character that we can understand the considerations which must have occurred to the chancellor in granting defendant's motion to dismiss. In such a case, it is sometimes difficult to recall and apply the distinction between inexpert pleading and insufficient pleading, but it is a distinction which must be made under the new rules. See Catanzaritti v. Bianco, D.C., 25 F. Supp. 457. Liberal though they are, however, the new rules both at law and in equity forbid prolixity in pleading, and counsel will find that time spent setting out a case briefly and in readily comprehensible form will pay dividends at every stage of the litigation and will ease and accelerate the judicial process. It should be remembered that not only opposing counsel but the trial court of its own motion may take the initiative in striking irrelevant matter, but counsel drafting pleadings should make every effort to *871 render such time-consuming measures unnecessary.
In spite of defects in the original complaint, it was sufficiently alleged that the individual plaintiffs were employees of defendant, that a grievance common to all plaintiff employees existed, that the defendant employer had arbitrarily refused to meet with the chosen bargaining representative of the plaintiff employees, that the employees had by majority vote called a strike, as it was their right to do, and that the employer had taken advantage of "company housing" to coerce the employees in the enjoyment of their rights. The proof at the hearing amply sustained these allegations by uncontroverted testimony and exhibits and further demonstrated beyond doubt that the suit was timely brought and the situation before the court required immediate action. Had the chancellor granted a temporary prohibitory injunction against the eviction proceedings and threats of eviction, as we hold that he should have done and that it was error not to do, the remainder of this litigation might not have been necessary. We encouraged resort to the courts by labor in Miami Laundry Co. v. Laundry, Linen, etc., Local Union No. 935, supra, Fla., 41 So.2d 305, and this is a case where speedy relief should have been granted.
Appellee argues it is affirmatively shown that the plaintiff employees were engaged in a "sit-down strike" in violation of F.S. Sec. 447.09(9), F.S.A., which makes it unlawful "[f]or any person to seize or occupy property unlawfully during the existence of a labor dispute" and that consequently equitable relief should have been denied under the "clean hands" doctrine, Miami Laundry Co. v. Laundry, Linen, etc. Local Union No. 935, supra. There was no evidence of a "sit-down strike" adduced at the hearing, or of any unlawful seizure or occupation of property within the meaning of the statute. The striking employees made no attempt to occupy the locus of their ordinary work activity, or to interfere in any way with the service of guests. They occupied their own living quarters, the only place to live that they had, and some of them were even denied access to those quarters and restrained in their movements by the acts of the employer. There is no occasion here, either from the allegations of the original complaint or from the record of the hearing, for the application of the "clean hands" doctrine to foreclose plaintiffs from equitable relief. Nor do we subscribe to the view that the employer was within its legal rights to threaten eviction proceedings when it appeared that the employees would not capitulate. Certainly eviction or the threat of eviction, standing alone, is lawful when a tenant has no right to remain on the premises, but under the circumstances here disclosed, due regard being given to the circulation by the employer of the "important notice" reproduced above, it cannot be doubted that the eviction steps taken by the employer were coercive measures forbidden by F.S. Sec. 447.09(11), F.S.A., and part of a scheme or pattern whereby the employer intended to use, and did use, every means at its disposal to deprive its employees of their right to bargain collectively. Its conduct in so doing was a violation of our statute.
The view that eviction or the threat of eviction from company housing may represent unlawful coercion has been taken by the National Labor Relations Board in a number of cases. See, e.g., In the Matter of Alaska Juneau Gold Mining Co., etc., 2 NLRB 125; Great Western Mushroom Co., etc., 27 NLRB 352; In the Matter of W.T. Carter, etc., 90 NLRB 2020; and L.J. Williams Lumber Co., 96 NLRB 635. It is true that the National Labor Relations Act provides (and the Taft-Hartley Amendment did not change this language) that it shall be an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed them * * *", 29 U.S.C.A. § 158(a) (1). [Italics added.] while our own statute makes it unlawful to "coerce or intimidate any employee in the enjoyment of his legal rights * * *." F.S. Sec. 447.09(11) F.S.A. Italics added. But we do not believe that this difference in statutory language is of controlling significance here. Nor is NLRB v. Hart Cotton Mills, 4 Cir., 190 F.2d 964, relied upon by appellee, inconsistent with the view which *872 we have taken. In that case, striking employees had continued to occupy company owned houses rent free for approximately three months after the strike commenced, and a warning by the employer that they could not expect to occupy these houses indefinitely without working or paying rent was held insufficient to support a finding of coercion by the Board. The case merely serves to emphasize the importance of the time element. In the case before us, when the employees struck, eviction was threatened immediately, and although it was at the "height of the season" the employer's primary purpose was retaliatory. Certainly the employer could not have been enjoined permanently from evicting striking employees from his premises, nor should the temporary injunction have been one of long standing. But temporary relief should have been granted for its possible value in bringing the parties together for the purpose of discussing their differences.
Other questions are raised in connection with the original complaint. We have not overlooked them, but those which we do not discuss hereinafter in connection with the amended complaint we consider to be moot because of the view we take of the later pleading.
The amended complaint is also a supplemental complaint under Equity Rule 27, 31 F.S.A., since it alleges matters which occurred subsequent to the filing of the original bill. As we suggested earlier, these subsequent events represented a complete change in the picture before the court. The employer met with the chosen bargaining representative of the employees for several conferences and is alleged to have entered an agreement. Injunction against the "continuous retraction" of this agreement is sought. "Continuous retraction" can mean no more than "breach", and a suit for injunction against breach of contract is tantamount to a suit for specific performance thereof. 28 Am.Jur., Injunctions, § 78. While we do not hold that specific performance of a collective bargaining agreement or any portion thereof will never be forthcoming (see 31 Am.Jur., Labor, § 118) we do hold that the allegations of the amended complaint are insufficient to support such relief here because no facts are alleged to justify the conclusion that the agreement has been breached. For the same reason, damages cannot be claimed by the plaintiffs, or any of them, for the breach of the alleged agreement. As the case is pleaded, moreover, it is indeed "multifarious", as the chancellor observed, both as to parties and claims for relief. It is obvious that the individual plaintiffs are not all similarly situated, and they should have sued in separate classes. It would also be impossible to ascertain their damages, if any, based on the complaint as filed. Appellants admit that "[a]ll the injuries sustained by the employees herein are impossible to ascertain in terms of money." To support the damage claim, however, they must show what injuries each person or each class of persons has sustained, and demand damages in a commensurate amount. The prayer for an injunction against "unfair labor practices" is too broad to require comment beyond the observation that the Florida statute itself is a continuing injunction against such practices.
Under the circumstances of this case, the order appealed from must be affirmed, but without prejudice to the plaintiffs, or any of them, to seek further relief in accordance with this opinion and the rules of practice.
Affirmed.
TERRELL, Acting C.J., and SEBRING and MATHEWS, JJ., and HOLT, Associate Justice, concur.
THOMAS, J., agrees to conclusion.
DREW, J., not participating.