97 So.2d 329 (1957)
Austin PEARCE, Rosa Lee Pearce, his wife, John F. Pearce and D.L. Pearce, Appellants,
v.
J.O. PEARCE, Appellee.
No. 92.
District Court of Appeal of Florida. Second District.
October 16, 1957.
Rehearing Denied October 29, 1957.
*330 George J. Baya, Miami, for appellants.
Thad H. Carlton, Ft. Pierce, and Henderson, Franklin, Starnes & Holt, Ft. Myers, for appellee.
ALLEN, Judge.
The appellants were defendants below and the appellee was the plaintiff. The parties will be hereinafter referred to as they appeared in the trial court.
The plaintiff in his complaint charged the defendants with closing certain natural drains and causing surface waters to be diverted and cast upon lands owned and leased by the plaintiff by reason of the construction of dikes upon the lands of the defendants.
The plaintiff owned and leased lands lying west of the lands of the defendants and also east of the defendants' land. The lands involved in this case are roughly bordered by the Kissimmee River on the east, Lake Okeechobee on the south and southeast and the Indian Prairic Canal on the west and southwest. The natural slope and drainage of the land was from the northwest, through various natural sloughs and drains, across plaintiff's land, then across defendants' land to the southeast into Lake Okeechobee. These sloughs and drains carried off water from a large area to the northwest of the parties' land and were taxed in times of heavy rainfall.
The plaintiff had originally built a levee on certain of his property lying east of the defendants property, which, to some extent, affected the flow of water across the defendants' property to the Kissimmee River basin. Subsequently, the defendants built dikes or levees on their property extending along the length of their east boundary, the length of their north boundary and about the north 2/5 the length of their west boundary. On said west boundary, the dike ended near the common corner of Sections 31 and 6 owned by the defendants and Sections 36 and 1 leased and owned, respectively, by the plaintiff. The defendants were extending this dike southward along the common boundary of plaintiff's Section 1 and defendants' Section 6 when the action was instituted to restrain further construction by the defendants. The Circuit Judge refused to grant a temporary injunction, and during the progress of the case in the lower court, the defendants extended the dike several miles southward to the southwest corner of their lands.
Voluminous testimony was taken in the case, the record showing approximately 600 pages with additional pages of depositions. The lower court, after final hearing, entered a Decree in favor of the plaintiff and required the defendants to open their levee at two points to prevent further flooding of the plaintiff's property. Supersedeas to this Decree was granted by the lower court.
The record discloses that the Circuit Judge personally inspected the lands and *331 dikes involved in this case before making his decision. Since the Judge made certain findings of fact in his Decree, we deem it advisable to quote, in full, the Decree from which this appeal is taken, as follows:
"Final Decree. This cause coming on to be heard upon the Bill of Complaint herein, as amended, the Answer and Counterclaim of the several Defendants and the evidence submitted, and the Court having made a personal inspection of the lands and premises involved, and counsel for the respective parties having submitted their argument and the Court having considered the same and being advised in the premises, does make the following findings of fact:
"(a) The dike constructed by Complainant around lands owned by Complainant and known as the `Beef Pasture' does not impede the natural flow of water so as to measurably increase water on Defendants' land.
"(b) Lake Istokpoga lies northerly and westerly of the lands involved in this action and from said Lake and the area tributary thereto the land slopes in a southeasterly direction across lands of both Complainant and Defendants and into Lake Okeechobee.
"(c) There are well defined water courses, sloughs and drains extending in a southeasterly direction across the lands of the Complainant and Defendants; that one such water course or drain crosses lands of the Complaint and into lands of Defendants at the meander corner lying directly east of the northeast corner of Section 1, Township 39 South, Range 33 East, and another such water course or drain crosses lands of Complainant and into lands of Defendant approximately one-quarter mile north of the southeast corner of Section 12, Township 39 South, Range 33, East, and prior to construction of Defendants' dike water flowed through such water courses or drains across lands of Complainant and Defendants and into Lake Okeechobee.
"(d) The dike constructed by Defendants obstructs the natural flow of water along and through the water courses and drains and causes said water to back up and flood the lands of the Complainant, particularly at times of heavy rainfall, and such flooding of Complainant's lands causes damage and injury thereto and deprives the Complainant of the use and enjoyment thereof for long periods of time.
"Thereupon, it is Ordered, Adjudged and Decreed as follows:
"1. That the equities of this cause are with the Complainant and the Complainant is entitled to the relief prayed in and by his Bill of Complaint.
"2. That the Defendants, Austin Pearce, Rosa Lee Pearce, his wife, John F. Pearce and D.L. Pearce, do within one hundred twenty (120) days from the date hereof, make or cause to be made, openings in the dike constructed by Defendants, such openings to be of sufficient width and depth to permit the free flow of water from the lands of Complainant through said natural drains to Lake Okeechobee, and to be located as follows:
"(a) One opening to be made at a point where the natural drain passes into lands of the Defendants at the meander corner lying directly east of the northeast corner of Section 1, Township 39 South, Range 33 East;
"(b) One opening to be made at the point where the natural drain passes into lands of the Defendants approximately one-quarter mile north of the southeast corner of Section 12, in Township 39 South, Range 33 East;
"3. The Court retains jurisdiction of this cause and of the parties hereto for the purpose of making such further *332 Orders or Decrees as may be necessary for the enforcement of this Decree.
"4. Costs herein in the amount of $355.85 are taxed against the Defendants.
"Done and Ordered at Moore Haven, Florida, this 23rd day of December, 1955. /s/ Lynn Gerald, Circuit Judge."
The defendants in their brief state the following questions as involved on this appeal:
"I. Whether or not flood waters are a common enemy against which the defendants were entitled to protect themselves without commission of any wrong. (Raised by Defendants' Assignment of Error No. 7.)
"II. Whether or not an owner of land may pump and divert water on his land onto lands of the lower owner.
"III. Whether or not an owner of land may draw off and carry surface waters in its natural direction and protect such land from additional water caused by upper adjoining owner.
"IV. Whether or not the trial court improperly rejected evidence and exhibits proffered by the defendants with respect to the acts and conduct of the plaintiff, similar to the acts and conduct of the defendants. (Raised by Defendants' Assignment of Errors Nos. 1, 2, 3, 4 and 5.)
"V. Whether or not the evidence as a whole compels the conclusion that the position of the plaintiff is inconsistent, because the plaintiff asked the court to prohibit the defendants from doing the same things which the plaintiff had theretofore done. (Raised by Defendants' Assignment of Error No. 7.)
"VI. Whether or not a mandatory injunction will be issued to a plaintiff who loses his interest in and to a portion of the subject matter prior to the issurance of the mandatory injunction."
The plaintiff states the following questions:
"First Point. Has any person the right to dam up by dike or otherwise, natural water courses, divert the waters from their natural courses, and cast them upon an adjoining owner to his injury?
"Second Point. Must a party changing or restraining the flow of water provide against more than ordinary rainfall occasionally occurring at irregular intervals?
"Third Point. Where evidence is conflicting, the trial court's findings, based upon substantial evidence, will not be set aside unless substantial error clearly appears."
The defendants in their brief argue that the law is well settled that a person has a right to protect himself against flood waters and contend that the plaintiff admitted on cross-examination that the dike of defendants did not hold back waters caused by normal rainfall, but only flood waters. Many citations are given in the defendants' brief to substantiate their theory in this case, including the following quotation from Davis v. Ivey, 1927, 93 Fla. 387, 112 So. 264, 269:
"* * * It (i.e. the Railroad) was not required to provide openings at all low, wet, swampy or depressed places which were not natural water courses, nor was it required to provide openings at the natural water course for unprecedented and unanticipated floods."
(Italics supplied.)
We believe that a study of the cited case (Davis v. Ivey, supra) would show that instead of aiding the defendants it is against the defendants.
The court charged the jury in the case of Davis v. Ivey, supra, as follows:
"`The court charges you that a railroad company which leaves an opening *333 under its tracks which is insufficient to carry the water flowing in natural water courses, is liable for whatever damages may accrue from the injury caused by a damming back of the waters upon the lands of persons in the vicinity, and the liability extends to injuries by unusual floods, but not to injuries caused by unprecedented floods.
"`The court charges you that, if you find from a preponderance of the evidence that the defendant diverted the natural flow of water, which natural flow was the result of ponds and swamps being connected with other ponds and swamps which formed strands, drains, or gutters extending and continuing for long distances easterly from defendant's embankment, and drained said waters from these strands, drains, or gutters, and caused said waters to be forced over plaintiffs' land, and that this was the proximate cause of the injury to plaintiffs' potato crop, then it is your duty to find a verdict for plaintiffs in accordance with the evidence and the further charges of the court.'
* * * * * *
"It appears to us that these charges clearly and correctly stated the principles of law involved. The Supreme Court of Alabama in Smith v. Western Ry. of Alabama, 91 Ala. 455, 8 So. 754, 11 L.R.A. 619, 24 Am.St.Rep. 929, in considering the liability of a railroad company for damages caused by a heavy flood, said:
"`While it is true that no human agency can prevent or stay an act of God, the act itself being that of omnipotence and irresistible, it is frequently the case that the results or natural consequences of an act of God, but the exercise of reasonable foresight and prudence, may be foreseen, and guarded against. When this can be done by the exercise of reasonable diligence and prudence, a failure to do so would be negligence, and subject the party upon whom this duty devolved to damages, although the original cause was an act of God.'
"In Ohio & M. Ry. Co. v. Ramey, 139 Ill. 9, 28 N.E. 1087, 32 Am.St.Rep. 176, * * * the court say:
"`* * * It is within the knowledge of all who have long resided in this state, that our streams are occasionally subject, after intervals, which are sometimes of shorter and at other times of longer duration, to great floods, occasioned by very heavy rainfalls, and their heights are known by those who have felt interested in them. Such rainfalls were not usual and ordinary, but they were unusual and beyond ordinary  i.e., they were extraordinary  and yet, it is just as certain that like rainfalls will occur in the future as it is that the same laws of nature by which they are produced, and the same conditions to be affected by those laws, will continue to exist in the future as they have in the past. Though of rare occurrence, such rainfalls are not phenomenal, and therefore beyond reasonable anticipation, and it is hence but the prudence that a discreet man would exercise in his own affairs to provide against injury from them. The question, then, is not whether appellant has sufficiently provided for the escape of the water of ordinary floods, but has it provided for the escape of the water of such unusual or extraordinary floods as it should have anticipated would occasionally occur in the future, because they had occasionally occurred after intervals, though of irregular duration, in the past.'"
In the recent case of Lawrence v. Eastern Airlines, Inc., Fla. 1955, 81 So.2d 632, 634, the Florida Supreme Court affirmed the principles enunciated in Davis v. Ivey, supra. In this case the Court said:

*334 "This was not a model complaint, but we think it was sufficient under our liberal system of pleading to withstand a motion to dismiss. See Hotel & Restaurant Employees, etc. v. Boca Raton Club, Inc., Fla., 73 So.2d 867, [48 A.L.R.2d 986]. In Davis v. Ivey, 93 Fla. 387, 112 So. 264, we held that persons changing or restraining the flow of water must provide against the consequences which will result from extraordinary rainfall. And in Brumley v. Dorner, 78 Fla. 495, 83 So. 912, a much-cited case in the field of nuisances from accumulation of water, we held the applicable rule to be that `No person has the right to gather surface waters that would naturally flow in one direction by drainage, ditches, dams, or otherwise, and divert them from their natural course and cast them upon the lands of the lower owner to his injury.' See also Dade County v. South Dade Farms, 133 Fla. 288, 182 So. 858, and Panama City v. York, 157 Fla. 425, 26 So.2d 184, wherein we reaffirmed this rule. We think the rule is broad enough and the facts alleged herein sufficiently similar to those in the Brumley case to sustain the instant complaint."
The lower court in its findings of fact determined that the dike constructed by the defendants obstructed the natural flow of water along and through the water courses and drains so as to flood the lands of the plaintiff, particularly at times of heavy rainfall.
A study of the testimony in this case convinces this court that the Chancellor had sufficient evidence before him upon which to base his finding of fact.
The defendants insist that since the lower court denied the plaintiff's prayer for a temporary injunction, the court was not justified in subsequently granting a mandatory injunction in his Final Decree on the grounds that the law of the case was established by the denial of temporary relief. The record shows that subsequent to the hearing for temporary injunction, additional testimony was taken, and that the Chancellor made a personal inspection of the lands, levees, dikes, etc. involved in this dispute. The record also shows that the lower court, in denying the temporary injunction, told counsel:
"Please do not infer that I have made any decision as to the facts in such rulings."
It would be hazardous indeed to apply for a temporary injunction if the court's denial of such application would preclude the granting of a permanent injunction at the conclusion of the case. Very often, on an application for a temporary injunction, the court includes in his consideration of the law and facts of the case, whether or not the plaintiff would be injured to an appreciable extent by denial of such temporary relief.
We are of the opinion that the denial of the temporary injunction did not preclude the lower court from issuing the Decree in this case.
The defendants also present the following question: Whether or not an owner of land may pump and divert water from his land onto lands of the lower owner. Mr. Turner Wallis, who testified at length as an expert witness on flood control problems, was asked whether or not, in his opinion, there would be an increase in the flow of water upon the lands owned by the defendants where waters were pumped from diked farms of some 90 to 110 acres onto outside lands, and where such waters flooded into the sloughs on the land and eventually flowed down through those sloughs onto and upon the lands of the defendants. His reply was that the area embraced within the farm dikes were too inconsequential in terms of the area and the water shed served by the sloughs to have any measurable effect upon the lands adjacent to the diked area. The lower court apparently concluded from this testimony that this question *335 was of no importance in the case before it and that the defendants sustained no injury as a result of the water pumped from the farm dikes.
The defendants under Point 4 of their brief, complain about the rejection of certain exhibits proffered by them, especially Exhibit No. 19. This exhibit, the defendants argue, sustains their contention that the plaintiff wished to drain his land as he pleased and to prevent the defendants from so doing.
Exhibit No. 19 showed the location of the construction of a dike to the west of the Indian Prairie Canal which was outside the bounds of the water shed involved in this case. From an inspection of this exhibit, we conclude the lower court was correct in his ruling on its proffer.
The defendants also argue that the evidence as a whole compels the conclusion that the position of the plaintiff is inconsistent because the plaintiff asked the court to prohibit the defendants from doing the same things which the plaintiff had theretofore done.
The above contention is based upon the fact that plaintiff built a dike on certain land owned by him east of the lands owned by the defendants. This dike was constructed in 1944 and was rebuilt in 1947 after it broke. The defendants constructed a dike on their land immediately west of the dike of the plaintiff. One of the defendants testified that their dike was built because the dike of the plaintiff diverted water from the Brighton Slough and cast it upon the lands of the defendants, thereby flooding the same. The first dikes built by the defendants were on their east and north boundaries while the dikes in issue in the lower court and now involved on appeal, were on the west boundary of the defendants' property. The latter border to a large extent on the properties of the plaintiff west of the lands of the defendants and lay approximately 4 miles west of the original dikes built by the plaintiff.
The Judge of the lower court in his findings of fact held:
"(a) The dike constructed by complainant around lands owned by complainant and known as the `Beef Pasture' does not impede the natural flow of waters so as to measurably increase water on defendants' land."
Mr. Wallis, the expert witness to whom we have formerly referred, testified in the case to the effect that the construction of the original dike by the plaintiff did not measurably increase the water on defendants' land. We cannot say that the Judge of the lower court, who heard the evidence, was incorrect in his conclusion of facts based upon such testimony.
The defendants also contend and argue, under their Point VI, that the mandatory injunction should have not issued to the plaintiff on the grounds that he had lost his interest in a portion of his land prior to the issuance of the mandatory injunction.
It is elementary that a party in an action will not be entitled to relief if he disposes of the subject matter of his complaint prior to the conclusion of his case, but it does not appear from the record in this case that the cessation of the interest of the plaintiff in certain property which he had leased in the Indian Reservation comes within the rule. The lands leased by the plaintiff were north of the lands owned by the plaintiff and east of the defendant's land. Water drained from the leased lands onto the lands owned by the plaintiff and then onto defendants' land. It is apparent that the lower court by its decree found, in effect, that the loss of interest of the plaintiff in the Indian Reservation lands did not effect the interest of the plaintiff in this case. We find no error in the court's determination of this fact.
The Judge of the lower court heard all the testimony in this case and the defendants must maintain the burden of showing the court had no substantial evidence *336 upon which to base his Decree. We conclude that the defendants have failed to maintain this burden. Parrish v. Clark, 107 Fla. 598, 145 So. 848; Jennings v. Pope, 101 Fla. 1476, 136 So. 471.
Decree affirmed.
KANNER, C.J., and PLEUS, J., concur.