SPOTO, I. C, Associate Judge.
The appellant was the defendant below and the appellee was the plaintiff. The parties will be hereinafter referred to- as they appeared in the trial court.
The plaintiff, in his complaint, sought to have the Court declare that certain notes held by the defendant had been paid and to order that the defendant satisfy of record his obligations thereon. The defendant answered denying the allegations of the complaint and counterclaimed for foreclosure of the mortgages and to secure judgment upon the notes.
The record discloses, in substance, that the plaintiff was the owner and operator of a small business which prepared and packed citrus fruit at a roadside packing house, which he operated in Howey, Lake County, Florida. The defendant was a banking institution, chartered as The First National Bank and Trust Company of Eustis, its place of business being located in the City of Eustis, Florida.
One Robert L. Kilpatrick was employed by the defendant bank as cashier. The plaintiff had known the cashier’s father for a number of years and, upon request of the father, who was a banker in the City of Lakeland, Florida, the plaintiff, in September, 1957, began to transact business with the defendant bank through and by reason of the cashier Kilpatrick.
The plaintiff’s business with the defendant consisted primarily in the borrowing of *29 money for the purpose of financing his business in the purchase of citrus fruit and repayment of such loans. The plaintiff continued this business relationship with the defendant dealing directly with Kil-patrick, as cashier of the defendant bank, through the years 1957, 1958 and the early part of 1959. The amounts borrowed from the defendant by the plaintiff varied and the payments on the loans were not regular.
The defendant bank’s cashier, Kilpatrick, did not appear at the bank for his duties on August 10, 1959, which was on Monday of that week. The vice-president of the defendant bank, Robert E. Warfield, testified that he, Warfield, on that day found on his desk an envelope containing a written confession made by the cashier Kil-patrick, to the effect that he had misappropriated for his own use, certain monies belonging to the defendant bank, and giving a detailed statement of all such misappropriations and exactly where they could be found in the bank’s records, and he further testified that the bank’s records, when examined, were in complete accord with the statement alleged to have been left by the cashier Kilpatrick.
The testimony of Vice-President War-field and the testimony of the plaintiff, together with exhibits filed in evidence by the defendant, show conclusively that there was a discrepancy between the amount indicated by the defendant bank’s records that the plaintiff had paid and the amount that the plaintiff claimed that he had paid on his account to the defendant bank during the year 1958. Vice-President Warfield further testified that he had not seen the cashier Kilpatrick since the Friday before his disappearance.
The plaintiff did not question that the notes, as indicated by the defendant bank’s records, were made by him to the defendant bank in consideration of the loans of the monies indicated by those notes, but testified that the notes were paid off and discharged by a series of payments made by him to the cashier Kilpatrick, either at the bank, at his packing house, or at his home. The alleged payments varied in amounts from $361.55 to as high as $1,200 and totaled $14,599.55, which the plaintiff claimed should have been applied to the payment of his notes, for which purpose they were paid to the defendant bank. The plaintiff further claimed that after applying the amount of $14,599.55 to the payment of the notes in the amount of $12,657.16, plaintiff would be entitled to a credit remaining and refund of $1,942.39.
Plaintiff and his wife testified that whenever payments were made on the notes, Kilpatrick gave plaintiff receipts but that when their home was destroyed by fire in August, 1959, these receipts were burned. However, the plaintiff’s wife kept a calendar book in which she made entries of these payments. This calendar book was introduced in evidence.
The defendant offered the testimony of one Maxine Hines, a teller of the defendant bank, who testified that she checked out of the bank at 6:56 P.M. on the 5th day of January, 1959, and that Kilpatrick was there when she left. This was one of the evenings on which the plaintiff claimed he had made a payment on the notes to Kil-patrick at his home. Another witness testified on behalf of the defendant that Kil-patrick arrived at a birthday party at a certain club in Eustis, Florida, at about 7:30 P.M. on the same evening and remained there until about 10:30 P.M. The witness further stated that Kilpatrick then went to Earl Lundy’s and played swish until about 1:00 A.M., thereby making it physically impossible for him to have received a payment on the notes from the plaintiff at the plaintiff’s home that evening.
Another witness testified on behalf of the defendant that Kilpatrick arrived at her home at 6:30 P.M. on April 27, 1959, and remained there until the following morning, which was another one of the evenings on which the plaintiff claimed he had made a payment to Kilpatrick at his home in Eustis, Florida.
*30 The witness, Maxine Hines,, also testified that she “kept hounding” Kilpatrick about getting the plaintiff to pay off his notes with the defendant bank and that the cashier, on those occasions, told her not to worry about them, that they would be taken care of. She further testified that Kil-patrick did not permit other persons to become as delinquent in the payments on their notes as he did the plaintiff. The witness, Maxine Hines, further stated that she and other employees of the defendant bank used to tease Kilpatrick relative to the plaintiff’s delinquency on the payments on the notes and would say to him “What does he have on you? Now, Bob, let’s get these paid.”
After considering the evidence and testimony submitted by the respective parties, the Chancellor found for the plaintiff, granted the relief prayed for in his complaint, ordered that the counterclaim of the defendant bank be dismissed, directed the bank to make the appropriate entries on its books, together with appropriate notations ■of payments on the several notes involved, and he directed the bank to surrender these notes to the plaintiff. In addition thereto he entered a judgment in favor of the plaintiff against the defendant in the sum •of $1,942.39, which represented the overpayment by the plaintiff on the notes. From this decree the defendant has appealed.
The defendant argues that the testimony offered on behalf of the plaintiff is inconsistent and is conflicting with some of the testimony offered by the witnesses for the defendant bank.
It is a well established rule under Florida Jurisprudence that the findings of a chancellor based upon conflicting evidence will not be disturbed unless clearly shown to be erroneous. See Carolina Lumber Company v. Daniel, Fla.App. 1957, 97 So.2d 156; Harmon v. Harmon, Fla.1949, 40 So.2d 209.
When the error assigned questions the sufficiency of the evidence to support the judgment or decree appealed from, the test is whether or not it can be said, after a careful review of the record in a light most favorable to the prevailing party, there is substantial evidence supporting the findings and conclusions upon which the decree or judgment is based. If the record reveals the existence of such evidence, it must be held that the disputed issues of fact were properly resolved and the judgment or decree of the trial court should be affirmed. See Carolina Lumber Company v. Daniel, supra; Eldridge v. Eldridge, 1944, 153 Fla. 873, 16 So.2d 163; Meola v. Sparks, 1939, 138 Fla. 364, 189 So. 408.
Appellate courts are not constituted for the purpose of relitigating issues of fact already decided by the trial court. It is not the province of an appellate court to revaluate conflicting evidence introduced at the trial or to say what it would have done had it been sitting as a trier of the facts. This is the exclusive function of the trial court. In such cases, it is the duty of the appellate court to determine whether the trial judge or chancellor made any ruling or conducted the proceedings in a manner contrary to established principles, of law to the prejudice of the appellant. See Povia v. Melvin, Fla.1953, 66 So.2d 494; Exchange National Bank of Winter Haven v. Smith, 1941, 148 Fla. 473, 4 So.2d 675.
Unless error can be clearly demonstrated, the judgment of the trial court will not be disturbed on appeal. See Loew v. Friedman, Fla.1955, 80 So.2d 672. The judge of the lower court heard all the testimony in this case and the defendant must maintain the burden of showing the court had no substantial evidence upon which to base his decree. See Pearce v. Pearce, Fla.App.1957, 97 So.2d 329. This it has failed to do.
We have carefully examined the record and the briefs filed; have duly considered argument of counsel before this court and have concluded that, in the light of the pleadings as made and the evidence *31 adduced thereunder, no reversible error has been made to appear.
Affirmed.
ALLEN, C. J., and KANNER, J., concur.