430 So.2d 560 (1983)
Joseph L. GOODMAN and Jan Goodman, Appellants,
v.
Melvin BECKER, D.D.S., Appellee.
No. 82-879.
District Court of Appeal of Florida, Third District.
May 3, 1983.
Greene & Cooper and Joan M. Bolotin, Rosenblatt, Greene & Arnowitz and Neal A. Roth, Miami, for appellants.
Walton, Lantaff, Schroeder & Carson and Joan S. Buckley and George Chesrow, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
The appellant Goodman suffered a severe stroke after an operation conducted under general anesthesia by Dr. Becker, an oral surgeon, in his office. Goodman and his wife sued Becker for alleged malpractice.[1] They now appeal from a judgment entered for the doctor upon a jury verdict in his favor. We reverse.
The plaintiffs' basic position at trial, supported by competent expert testimony to that effect, was that Goodman's *561 circulatory and hypertensive problems, as manifested by symptoms of which Becker was or should have been aware, rendered it inadvisable and negligent to perform the operation, and that the stroke was caused by the effect of the procedure, particularly the anesthesia, acting upon and combined with the plaintiff's pre-existing physical condition. We agree with the plaintiffs' primary appellate contention that this testimony[2] entitled them to the standard jury instruction on concurrent causes which was rejected by the trial court. The variation of SJI 5.1 b[3] which applies to these facts, as requested below, was as follows:
Negligence may be a legal cause of ... injury ... even though it operates in combination with ... some natural cause ... if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such loss, injury or damage. [e.s.]
It is undisputed that this charge correctly reflects the equally unassailable principle that a wrongdoer remains liable for a consequent harm when the result is caused by a congruence of his own negligent act with a natural force or condition, often called an "Act of God,"[4] such as Goodman's pre-existing physiological and anatomical status. Davis v. Ivey, 93 Fla. 387, 112 So. 264 (1927); 57 Am.Jur.2d Negligence § 181 (1971); 65 C.J.S. Negligence § 115 (1966). Moreover, there is no doubt that the failure to give an applicable concurring causes instruction constitutes reversible error.[5]Clooney v. Geeting, 352 So.2d 1216 (Fla. 2d DCA 1977); Little v. Miller, 311 So.2d 116 (Fla. 4th DCA 1975); Ruiz v. Cold Storage & Insulation Contractors, Inc., 306 So.2d 153 (Fla. 2d DCA 1975), cert. denied, 316 So.2d 286 (Fla. 1975); compare, Caputo v. Taylor, 403 So.2d 551 (Fla. 1st DCA 1981) (SJI 5.1 b properly refused only because, unlike this case, there was no evidence that physician's conduct had contributed to or aggravated plaintiff's condition). These cases are controlling here. On their authority, the judgment is reversed for a new trial.
Reversed and remanded.
NOTES
[1] Including a claim that informed consent had not been secured.
[2] Since the right to a jury instruction arises when there is any evidence to support it, Corbett v. Dade County Board of Public Instruction, 372 So.2d 971 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1192 (Fla. 1980), the acknowledged existence of contrary testimony on these points  to the effect that the doctor was not negligent and that the stroke would have occurred anyway  is immaterial.
[3] The entire standard instruction, with all its possible permutations, states:

b. Concurring cause:
In order to be regarded as a legal cause of [loss] [injury] [or] [damage], negligence need not be the only cause. Negligence may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with [the act of another] [some natural cause] [or] some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such [loss] [injury] [or] [damage]. [e.s.]
[4] Thus, the defendant's final argument suggested that the Almighty alone was responsible for the plaintiff's condition:

It was inevitable ... God decided that on August 22nd at five o'clock in the afternoon Mr. Goodman was going to have that stroke.
[5] In the absence of 5.1 b, defendant's counsel was able, with the apparent approval of the court, effectively to argue that the Goodmans had to establish that Dr. Becker  apparently rather than God, see n. 4 supra  had actually caused the stroke:

Why it occurred then as opposed to the 21st or the 25th, I don't know.
I don't think anybody knows that, but it didn't occur because of what Dr. Becker had done.
The plaintiffs have to prove to you to your satisfaction that Dr. Becker's treatment, his anesthesia, and his treatment caused that stroke to occur and if they don't prove that to you to your satisfaction, you must bring back a verdict for the defendant.
The very significance of SJI 5.1 b is, however, as the committee note states, that it "negates the idea that a defendant is excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage."