ZEHMER, Judge.
Jerri Taletha Holman and her parents, Jeff and Sandra Holman, appeal a final judgment entered in this medical malpractice action pursuant to a jury verdict for Mark N. Goldschmidt, M.D. We reverse and remand upon the holdings that the trial court erred in ruling that there was no triable issue regarding Dr. Goldschmidt’s liability for the negligent acts of Dr. Soud, if any, and that the court erred in refusing to give the requested standard jury instruction 5.1(b) on concurring causes. We find no merit in appellant’s two remaining points.
On August 12, 1983, Jeff and Sandra Holman took Taletha, their six-year old daughter, to Dr. Goldschmidt’s office because she was experiencing fever, vomiting, loss of appetite, and abdominal pains. Dr. Goldschmidt, a pediatrician, diagnosed Taletha's condition as an intestinal virus. On August 14, 1983, Mrs. Holman called Dr. Goldschmidt’s office because Taletha’s condition had deteriorated. Dr. Gold-schmidt was off that weekend and Dr. Gary Soud, who was “covering” for Gold-schmidt, returned the Holmans’ call. The substance of this conversation is disputed. Dr. Soud testified that he was told that Taletha was not experiencing any abdominal pain, whereas Mrs. Holman testified that she told Dr. Soud that Taletha still was experiencing abdominal pain. The testimony was undisputed that Dr. Soud advised the Holmans to continue to give Tale-tha clear liquids and requested them to call him back if Taletha did not urinate within the following few hours. Taletha did urinate and Mrs. Holman did not call Dr. Soud back that evening. The severity of Tale-tha’s condition over the next two days is a matter of some dispute. On August 16, 1983, however, Mrs. Holman called Dr. Goldschmidt’s office and stated that Tale-tha continued to exhibit the same symptoms, and in response she was given an appointment for August 17. Later on August 16 the Holmans took Taletha to a hospital emergency room where doctors determined that she was suffering severe peritonitis as the result of a perforated appendix and immediately performed surgery. Taletha’s surgeon testified that he found two quarts of pus in her pelvic area and that she would have adhesions in her abdomen for life.
Subsequently, the Holmans brought this malpractice suit against Dr. Goldschmidt alleging that he was negligent in his care and treatment of Taletha. At trial, Dr. Goldschmidt disputed the Holman’s version of the history and descriptions of Taletha’s condition given to him and Dr. Soud during their several conversations. The jury returned a verdict for Dr. Goldschmidt. Each of the issues the Holmans raise on this appeal stems from alleged erroneous rulings made during the trial.
I.
First, appellants assert that the court erred in not permitting the jury to consider whether Dr. Goldschmidt was responsible for the acts of Dr. Soud on August 14, 1983. The court made the disputed ruling at the charge conference, following denial of appellants’ request to have the jury instructed that Dr. Goldschmidt “is responsible for any negligence of his agent, Dr. Gary Soud, on August 14, 1983, in providing health care services for Jerri Taletha Holman” (emphasis added). The court ruled that appellants failed to plead or present any evidence of an agency relationship between Drs. Goldschmidt and Soud and denied appellants’ motion to so amend the pleadings to conform to the evidence. The court precluded the jury from considering whether Dr. Goldschmidt should be held liable for Dr. Soud’s actions and stated that “the only issue in the case” was whether “Dr. Goldschmidt negligently failed to diagnose the child.” Appellee contends that the trial court correctly refused to submit this issue to the jury because the complaint did not name Dr. Soud as Dr. Goldschmidt’s agent, did not allege that Dr. Soud negligently failed to advise the Hoi- *502 mans that Taletha was in need of further medical treatment, and did not allege that Dr. Goldschmidt was otherwise legally responsible for any negligence on the part of Dr. Soud.
A.
No Florida court decision appears to have addressed whether the agency of one acting for the principal must be explicitly pleaded in a tort case, but this pleading issue has been addressed in the context of a contract case. The rule in Florida is that one suing on a contract made for the defendant by his agent need not allege the agency in the complaint; it is sufficient for the plaintiff to allege the legal effect of the agent's action on the defendant’s legal liability. Maestrelli v. Arrigoni, Inc., 476 So.2d 756 (Fla. 5th DCA 1985). The fifth district explained in Maestrelli that the issue of a principal’s liability for the acts of his agent is not a “theory of liability” in the sense of a cause of action that must be pleaded to invoke the trial court’s subject matter jurisdiction and meet due process requirements.
Appellee has not offered, and we cannot perceive of, any rationale for applying a different rule in this case because it is a tort, rather than a contract, action. On the contrary, the general consensus of decisions from other jurisdictions that have considered this pleading issue in the context of tort cases is that a complaint in an action against a principal for the tort of his agent need not disclose that the act complained of was not committed by the principal himself but was the act of the agent. See Annot., 4 A.L.R.2d 292 (1949) (generally stating that a plaintiff’s pleading in such an action is sufficient if it charges misconduct against the principal defendant personally without mention of the servant or agent).
We hold that the allegations in paragraphs 7, 14 and 15 of the complaint[1] were sufficient to allow appellants to present evidence of Dr. Soud’s actions on August 14 in responding to the call to Dr. Gold-schmidt as evidence of negligence in fulfilling the latter’s continuing duty of care in respect to the treatment of Taletha. The complaint alleges that Dr. Goldschmidt undertook to diagnose and treat Taletha for abdominal complaints on August 12, when she was first presented to his office. The allegations of the complaint are sufficient to give notice that pursuant to this undertaking the Holmans were looking to Dr. Goldschmidt, and not others unknown to them, to provide follow-up care during the ensuing days. The allegations also give notice that because Taletha was not doing well after a day or so, the Holmans called Dr. Goldschmidt’s office on August 14 and received instructions for continued treatment from someone unnamed in the complaint, but who must have been either Dr. Goldschmidt himself or someone authorized to act for him in the care of his patients during his absence, such as Dr. Soud was shown to be. Since it was not necessary as a matter of pleading to name the person who responded on Dr. Goldschmidt’s behalf, these allegations were sufficient to permit the court to receive evidence proving that, as a matter of fact, someone else was acting for Dr. Goldschmidt at the time of the Holmans’ telephone call on August 14 and that this person did so negligently in the manner alleged. See cases cited in *503 the annotation at 4 A.L.R.2d 292 and the 1988 supplement thereto.[2]
B.
Reversal on this issue is further buttressed by our conclusion that the parties knowingly tried the issue of Dr. Soud’s negligent acts on behalf of Dr. Gold-schmidt. Despite the lack of identification of Dr. Soud in the complaint and the lack of specific allegations that Dr. Soud was acting for Dr. Goldschmidt on August 14, and despite the fact that no such issue was specifically identified in the pretrial order, this issue was tried by both parties without any basis for surprise to the defendant at trial and without any hint of “sandbagging” or playing “gotcha” by the plaintiff. The following statement by Dr. Gold-schmidt’s attorney at the Holmans’ pretrial discovery deposition of Dr. Soud demonstrates the defendant’s understanding of the issues raised by the pleadings and belies any notion that appellee was unfairly surprised by appellants’ attempt to have the jury consider this issue at trial:
Let me just object at this point. Number one, your expert [Dr. Abramson] has already testified this gentleman [Dr. Soud] was operating as an agent of my doctor and was working with my doctor. And I have the right to speak to people that are working with him. And, according to your expert, that’s the situation.
If you all want to drop any allegation pertaining to my doctor being responsible for this gentleman’s alleged negligence, then we’ll cross that bridge—
(Emphasis added) (Soud deposition at p. 9).
Consistent with this expression of the issues, Dr. Goldschmidt’s counsel did not object at trial to appellants’ presentation of Dr. Abramson’s deposition testimony wherein Abramson testified that Dr. Soud deviated from the appropriate standard of care in not instructing appellants on August 14 to immediately take Taletha to him or to the hospital for examination (R. 245). Likewise, appellee’s counsel did not object to Dr. Abramson’s deposition testimony that appellee was responsible for Dr. Soud’s negligence (R. 243). Appellee’s own counsel elicited testimony from Dr. Soud that he and appellee had an arrangement whereby they would each take off one weekend a month and one-half day a week, and during their time off each doctor would cover for the other (R. 465-466); that the Holmans called appellee’s office on August 14 and Dr. Soud returned that call because he was “covering” for appellee (R. 482-483); and that Dr. Soud would bill appellee’s patients directly when covering for appellee (R. 466). Appellee’s counsel also questioned both Drs. Talbert and Col-yer as to whether the actions of Dr. Soud comported with the appropriate standards of care (R. 534-535, 618, 619). This testimony was not relevant to the issue of Dr. Goldschmidt’s negligence in diagnosing Ta-letha on August 12, the single issue allowed to go to the jury; it was relevant only to rebut the contention that Dr. Soud acted negligently in treating Taletha on behalf of Dr. Goldschmidt.[3] At the very *504 least, the testimony taken as a whole presented an issue for the jury concerning Dr. Goldschmidt’s responsibility for any negligence of Dr. Soud in responding to the call on August 14.[4]
When an unpleaded issue is tried by express or implied consent, it is to be treated in all respects as if raised by the pleadings, whether or not a motion is made to amend the pleadings to conform to the evidence. Rule 1.190(b), Fla.R.Civ.P.;[5] Di Teodoro v. Lazy Dolphin Development Company, 418 So.2d 428 (Fla. 3d DCA 1982), pet. for rev. denied, 427 So.2d 737 (Fla.1983). As noted previously, defendant did not object to any of the evidence on this issue, and in view of defense counsel’s stated understanding of the issues during pretrial discovery, there was no apparent prejudice to the defendant in maintaining his alleged defense. Thus, notwithstanding the sufficiency of the complaint to allege the issue of Dr. Goldschmidt’s liability for Dr. Soud’s negligent acts on August 14, the issue was ripe for the jury’s determination by virtue of having been tried by the parties’ implied, if not express, consent. The court’s denial of appellants’ motion to amend the pleadings to conform to the evidence and the consequent foreclosure of any issue and argument regarding Dr. Goldschmidt’s responsibility for Dr. Soud’s negligence deprived the appellants of their right to have the jury decide an essential issue and constitutes reversible error requiring a new trial on all issues. See Doctors Memorial Hospital, Inc. v. Evans, 543 So.2d 809 (Fla. 1st DCA, 1989).
II.
The second issue raised on appeal is whether the trial court erred in denying the Holmans’ request to give standard jury instruction 5.1(b) on concurring causes.[6] For the following reasons, we hold it was error to deny the requested instruction.
Following standard jury instruction 5.1(a), the trial court instructed the jury that:
Negligence is a legal cause of loss, injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage, so that it can reasonably be said that, but for the negligence, the loss, injury or damage would not have occurred.
*505 (R. 733.) This “but for” instruction, standing alone, is obviously sufficient when only one operative cause of a plaintiffs injury is present. However, it usually is misleading if two or more causes are present because the instruction, without further explanation, indicates to the jury that a defendant would be liable only if the resulting injury would not have occurred unless the defendant had been negligent; that is, that the defendant’s negligence was the" only cause of the resulting injury. For this reason, the standard jury instructions also include an instruction on concurring cause when two or more operative causes are present. See generally, Stahl v. Metropolitan Dade County, 438 So.2d 14, 17-19 (Fla. 3d DCA 1983). The legal concept of concurring cause is not a matter of common knowledge among lay persons, and apparently is a matter of some confusion to lawyers and judges.[7] Therefore, the “idea that a defendant is not excused froto the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage” is not something the courts should assume the average juror comprehends without assistance by proper instruction from the court.[8]
By its own terms, the concurring cause instruction is to be given when the cause attributed to the defendant’s negligence “operates in combination with [the act of another] [some natural cause] [or] some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such” injury. Thus, the instruction is appropriate in cases where the other operative causes are attributable to the .negligent conduct of one other than the defendant, the negligent conduct of the plaintiff, and a natural condition acting to produce the injury. The critical requirement is that the defendant’s negligence be a substantial cause of the injury whether or not the injury would have occurred in the absence of such negligence. See generally, Voght, Tests of Causation and the Florida Jury Instructions — The Current Conflict and the Need for a Change, 32 Fla.L.Rev. 308 (1980).
In Goodman v. Becker, 430 So.2d 560 (Fla. 3d DCA 1983), the trial court denied a concurring cause instruction in a medical malpractice case in which the plaintiff Goodman “had suffered a severe stroke after an operation conducted under general anesthesia” by the defendant Becker, an oral surgeon. The court noted that “the plaintiff’s basic position at trial, supported by competent expert testimony to that effect, was that Goodman’s circulatory and hypertensive problems, as manifested by symptoms of which Becker was or should have been aware, rendered it inadvisable and negligent to perform the operation, and that the stroke was caused by the effect of the procedure, particularly the anesthesia, acting upon and combined with the plaintiff's pre-existing physical condition.” Judge Schwartz, writing for the court, held that it was reversible error to deny the requested instruction because the charge “correctly reflects the equally unassailable principle that a wrongdoer remains liable for a consequent harm when the result is caused by a congruence of his own negligent act with a natural force or condition, often called an ‘Act of God,’ such as Goodman’s pre-existing physiological and anatomical status.” 430 So.2d at 561. He also observed that, “Since the right to a jury instruction arises when there is any evidence to support it, [citations omitted], the acknowledged existence of contrary testimony on these points — to the effect that the doctor was not negligent and that the stroke would have occurred anyway — is immaterial.” Id. at 561, n. 2.
*506 Likewise, in Marrero v. Salkind, 433 So.2d 1224 (Fla. 3d DCA 1983), a medical malpractice action for the wrongful death of the plaintiffs wife, the wife had suffered complications in three prior pregnancies and was identified as a high risk patient who required careful monitoring during her fourth pregnancy. When the fetus was mature, the defendant physicians induced labor utilizing a certain drug, and the wife experienced distress during delivery and died of a massive amniotic fluid embolism. The baby was delivered alive shortly thereafter by Caesarean section. Plaintiff contended at 'trial that the evidence showed the death “was caused by the negligence of the doctors, in combination with a natural cause, the amniotic embolism.” Id. at 1225. On the authority of Goodman v. Becker, 430 So.2d 560, the court reversed for a new trial based on the trial court’s refusal to give the concurring cause instruction.
In Tilley v. Broward Hospital District, 458 So.2d 817 (Fla. 4th DCA 1984), a medical malpractice action for the death of plaintiffs infant son, the baby had numerous medical problems shortly after a premature birth, and surgery was performed on two occasions. There was evidence that a surgical sponge was left in the child after the second surgery, after which the child developed an infection and died. “The hospital contended death was due to natural causes including the prematurity of birth; the Tilleys contended death was due to the negligence of the hospital and its employees in delivering and treating the baby.” Id. at 818. Reversing the trial court for denying a concurring cause instruction on the authority of the above two decisions, Judge Barkett wrote for the court as follows:
It is clear that the omitted standard jury instruction 5.1(b) addressed a material issue in the case. The record contains much expert testimony on the inherent problems of premature babies (the “natural cause” element), as well as much expert testimony on the possibly negligent conduct of the hospital in attending to Mrs. Tilley and the child (the concurring “negligent cause” element). Therefore the instruction was applicable and should have been given.
458 So.2d at 818. The court also held that the giving of standard jury instruction 5.1(c) on intervening cause did not correct this omission.
In Miller v. Court, 510 So.2d 926 (Fla. 4th DCA 1987), once again the court reversed for failure to give a concurring cause instruction in a medical malpractice action, holding:
The standard jury instruction 5.1(b) on concurrent causes is applicable when the' plaintiffs injury is caused by a doctor’s negligence, acting upon and combined with the plaintiff’s pre-existing physical condition. [Citations omitted.] In the instant case, there was evidence presented that Dr. Court’s alleged negligence combined with Mrs. Miller’s pre-existing diabetic condition causing her coma. Dr. Court’s negligence was alleged to be his taking Mrs. Miller off her diabetic medicine and his failing to substitute an alternative drug. This evidence entitled Mrs. Miller to an instruction on concurring causes, and the failure to give such instruction constituted reversible error. See Goodman; Higgins; and Marrero.
510 So.2d at 927. It should be noted that appellees contended that Mrs. Miller’s coma was caused by her abuse of drugs and alcohol rather than appellees’ medical treatment of her, but the court held that evidence of such abuse was not admissible, thus removing this issue from consideration by the jury.
For other decisions applying the concurring cause rule in similar circumstances, see Borges v. Jacobs, 483 So.2d 773 (Fla. 3d DCA 1986); Barabas v. Rojas, 481 So.2d 1003 (Fla. 4th DCA 1986). All of these decisions recognize that a concurring cause instruction is required when the defendant’s alleged negligence acts in combination with the plaintiff’s ongoing medical condition to cause the resulting injury upon which suit is brought.
Likewise, the concurring cause instruction is appropriate if the plaintiff is charged with comparative negligence. *507 Thus, in Higgins v. Johnson, 434 So.2d 976 (Fla. 2d DCA 1983), another medical malpractice action, the appealing plaintiff consulted the defendant chiropractor with complaints of low back pain, which the latter diagnosed as low back sprain and treated chiropractically for several weeks. But the plaintiffs condition grew progressively worse and ultimately resulted in serious paralysis and loss of bladder and bowel functions due to a malignancy that the defendant had failed to discover. The plaintiff sued for negligence in failing to observe proper standards of chiropractic medicine, and the defendant countered that the plaintiff was guilty of comparative negligence for failing to heed the chiropractor’s suggestion to consult with a medical doctor. The court, observing that denial of the requested instructions on concurring cause and intervening cause “left the jury with only the consideration of appellee’s negligence as a legal cause of appellant’s injury,” reversed for a new trial because the “charges on concurrent and intervening cause are necessary in assessing the negligence of the parties, not simply in assessing the damages.” 434 So.2d at 977.
In Wilson v. Boca Raton Community Hospital, Inc., 511 So.2d 313 (Fla. 4th DCA), rev. denied, 519 So.2d 988 (Fla.1987), the court noted that even if it were error under the cases cited above not to give a concurring cause instruction where the plaintiff contended that the doctor had misdiagnosed his condition and the doctor contended that the plaintiff died as a result of ingesting paraquat poisoning that “had set in motion an irreversible onset of death before the patient presented himself at the emergency room,” id., nevertheless a verdict for the defendant doctor would be affirmed upon the ground that under the circumstances the jury had not been misled by omitting this instruction because the crucial questions were whether the defendant physician’s “misdiagnosis was brought about because of the patient’s insistence he did not ingest paraquat and whether death was certain to occur in any event by the time the patient showed up in the emergency room.” Id. at 314. It seems apparent from the opinion that the critical fact in issue was whether the plaintiff had told the physician that he ingested the paraquat poisoning or whether he only said that it was sprayed upon him, and the instructions given were apparently adequate to inform the jury of the law governing its disposition of that issue.
The Wilson decision may also be explained on the rationale that the plaintiff’s previous ingestion of drugs causing the illness for which treatment was sought con-' stituted a remote condition or conduct furnishing only the occasion for the medical provider’s negligence and thus was not a proximate or legal cause of the result of said provider's subsequent negligence or malpractice. See, e.g., Whitehead v. Linkous, 404 So.2d 377 (Fla. 1st DCA 1981) (Plaintiff’s suicide attempt merely a preexisting condition and therefore not a legal cause of damage in medical malpractice action charging emergency room physician with negligence in failing to save plaintiff’s life). We can readily understand the application of this principle to preclude an instruction on comparative negligence based on the plaintiff’s suicide attempt that caused his initial physical condition requiring medical treatment, as was the case in Whitehead v. Linkous, but we do not believe it supports the denial of a concurring., cause instruction where the physical condition, once set in motion, continues to operate in combination with the medical provider’s negligence to produce the resulting injury. Where the plaintiff’s antecedent conduct caused a progressively changing medical condition, whether or not such conduct is too remote to support the defense of comparative negligence, an instruction on concurring cause is necessary to explain the defendant’s legal liability for contributing to the extent or severity of the eventually resulting injury or loss.
The above decisions collectively establish that the concurring cause instruction should be given where the plaintiff patient is properly charged with comparative negligence and where there is a concurring natural condition that operates in conjunction with the defendant’s alleged malpractice. The issues and evidence in *508 this case fit squarely within the latter circumstance. Taletha Holman suffered permanent injury as a result of the peritonitis caused by the rupture of her infected appendix. One cause of this resulting injury was unquestionably the ongoing progressive condition of the diseased appendix, while another cause was the defendant’s alleged medical negligence in failing to properly diagnose and treat this condition. Undoubtedly, this ongoing condition of the diseased appendix, left untreated and unchecked, might well result in the severe peritonitis found by the surgeon. Proper treatment timely administered could reduce the severity of the results, but not necessarily prevent such results completely. So it may be said with candor that this disease process or condition by itself could have caused the peritonitis and injury despite the defendant doctor’s proper diagnosis and treatment of the condition. In this sense, therefore, there is room for the jury to conclude that Taletha’s injury did not occur “but for” the negligence of the defendant, as they had been instructed. But the law also authorizes recovery of damages for Taletha’s resulting permanent injury caused by the ongoing natural condition so long as the defendant physician’s negligence was also shown to be a substantial factor in causing or contributing to the extent or severity of her resulting injury. For this reason, an instruction on the law of concurring cause was necessary to insure that the jury understood that the defendant could be held liable even though another operative cause was present.
The most compelling reason for giving the concurring cause instruction in this case derives from the trial court’s ruling denying the requested instruction that Dr. Goldsmith was liable for the negligence of his agent, Dr. Soud. As stated previously, evidence was presented at trial that Dr. Soud was also negligent in failing to correctly diagnose the seriousness of the child’s medical condition and properly treat it, and the plaintiff’s theory was that both the negligence of Dr. Goldsmith on August 12 and that of Dr. Soud on August 14 with respect to Taletha’s ongoing condition resulted in the peritonitis due to the perforated appendix. When the trial court declined to permit any issue of Dr. Soud’s negligence to go to the jury under the pleadings, that doctor’s negligence immediately became, in the legal sense, that of a third party which operated in combination with the negligence of Dr. Goldsmith. Even the dissent will agree that the concurring cause instruction is intended to be given where the negligence of a third party concurs with the negligence of the defendant in causing an injury.[9]
When a requested instruction accurately states the applicable law, the facts support giving the instruction, and the instruction is necessary to allow the jury to properly resolve all of the issues in the case, failure to give such instruction constitutes reversible error. E.g., Miller v. Court, 510 So.2d 926; Tilley v. Broward Hospital District, 458 So.2d 817. Here, the Holmans presented evidence in support of their allegations that the physician’s negligence, in combination with Taletha’s preexisting appendicitis, caused the severity of her injuries. The court’s failure to give this instruction, in the absence of another instruction adequately addressing concurrent causes, was error requiring a new trial.
III.
Appellants’ third point challenges the court’s failure to instruct the jury to determine whether Dr. Goldschmidt was negligent in “evaluating,” rather than “diagnosing,” Taletha’s condition. They state *509 that they presented no evidence that Dr. Goldschmidt was required to make a “diagnosis” of appendicitis; rather, they presented evidence showing that Dr. Goldschmidt should have recognized the presence of a surgical condition. Appellants assert that use of the word “diagnose” instead of “evaluate” in the requested instruction stripped them of their theory of the case and was tantamount to a directed verdict. We find no abuse of discretion in the court’s refusal to give the instruction requested by appellants. Although the jury instruction the court selected held appellants to a more burdensome degree of proof in establishing negligence on the part of Dr. Goldschmidt, it was consistent with appellants’ charge against appellee in the complaint, the issue presented in the pretrial stipulation, and the testimony elicited from witnesses of both parties regarding Dr. Goldschmidt’s duty to diagnose Tale-tha’s medical condition. Thus, we affirm as to appellants’ third point on appeal.
IV.
Finally, appellants challenge as erroneous the trial court’s ruling that confined the testimony of Dr. Garoni, Tale-tha’s surgeon, to prognosis and damages. The record reflects no objections from appellants’ counsel as to any. such restrictions and no attempt by appellants’ counsel to proffer any testimony of Dr. Garoni that might have been outside the court’s limitation. The law is clear that a litigant may not fail to voice objections at trial and then raise them, claiming prejudice, for the first time on appeal. Allstate v. Gillespie, 455 So.2d 617 (Fla. 2d DCA 1984). Unless the error complained of is brought to the attention of the trial court, ordinarily it is not preserved for appellate court review. G.W.B. v. State, 340 So.2d 969 (Fla. 1st DCA 1976), cert. denied, 348 So.2d 948 (Fla.1977). When objections to an intended area of inquiry are made and sustained, the reviewing court cannot find the rulings error unless the proposed testimony is proffered by the offering party, which was not done in this case. Atlantic Distributors, Inc. v. Alson Manufacturing Co. 141 So.2d 305 (Fla. 3d DCA 1962). Because appellants failed to properly preserve this issue for review, we affirm the fourth point on appeal.
AFFIRMED in part, REVERSED in part, and REMANDED for a new trial.
SHIVERS, C.J., concurs.
THOMPSON, J., concurs and dissents with opinion.

. . These allegations read as follows:
7. On August 14, 1983, Sandra Gail Holman called the office of Mark N. Gold-schmidt, M.D. from her home and related that her child, Jerri Taletha Holman, had the same symptoms except she was definitely worse and there was no urination or bowel movement. There was no indication given to Sandra Gail Holman that her child was in need of further medical treatment.
14. Notwithstanding said agreement and undertaking, Mark N. Goldschmidt, M.D. rendered medical care and treatment to the minor plaintiff in a manner described in the previous paragraphs which is a departure from the accepted and reasonable standards of medical care and treatment for physicians in such cases.
15. Jerri Taletha Holman received negligent care and treatment consisting of a failure by Mark N. Goldschmidt, M.D. to diagnosis [sic] her symptoms as appendicitus [sic] and failing to alert Sandra Holman about the need of additional medical care.

. The dissent argues that although the complaint need not allege the agency of Dr. Soud to hold the defendant liable for his conduct when acting as an agent on behalf of Dr. Goldschmidt, nevertheless the complaint must identify Dr. Soud and allege what he did that constitutes negligence. Such contention is not supported by the numerous cases cited in the annotation referred to (many of which were decided under more strict common law rules of pleading prior to adoption of the liberal pleading practices allowed by the Federal Rules of Civil Procedure and state rules following that lead, such as the Florida rules). Nor is it supported by any Florida decision coming to our attention.

. The order setting this case for oral argument directed the “parties to be prepared to argue the applicability of the doctrine of nondelegable duties to the facts of this case.” However, appellants’ attorney did not request a jury instruction on the law pertaining to nondelegable duties, see e.g., Irving v. Doctors Hospital of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA), rev. denied, 422 So.2d 842 (Fla.1982), and did not argue such issue in their brief on this appeal; therefore, we expressly decline to consider the applicability of that doctrine in this case one way or the other. The suggestion in the dissent that this note implies approval of its applicability to these facts is a complete misreading of this note.

. We do not find Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126 (Fla.1985), controlling on this issue. The facts recited above belie any semblance of suprise to appellee’s counsel that appellants were contending that Dr. Goldsmith was liable for the negligent acts of Dr. Soud, a critical factor missing in the Tamiami Trail Tours case. There simply is no basis upon which to conclude the defendant's counsel were sandbagged by the failure to amend as to the agency issue. We are not prepared to read either Tamiami Trail Tours or Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988), as standing for the proposition that an attorney can state during pretrial depositions that the pleadings raise an agency issue that permits his examination of the witness on that issue, and thereafter successfully urge at trial that no such issue was ever pleaded and he is now surprised by the injection of the issue in the trial.

. Rule 1.190(b) specifies:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform with the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the court that the admission of such evidence will prejudice him in maintaining his action or defense upon the merits.

.The requested instruction reads:
In order to be regarded as a legal cause of loss, injury, or damage, negligence need not be the only cause. Negligence may be a legal cause of loss, injury, or damage, even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such loss, injury, or damage.

. See the comments of the court in Wilson v. Boca Raton Community Hospital, Inc., 511 So.2d 313 (Fla. 4th DCA), rev. denied, 519 So.2d 988 (Fla.1987).

. The note on the use of Charge 5.1(b) states: Charge 5.1(b) (Concurring cause) to be given when the court considers it necessary, does not set forth any additional standard for the jury to consider in determining whether negligence was a legal cause of damage but only negates the idea that the defendant is excused from the consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage.

. The dissent recognizes that the evidence adduced at trial “allowed defendant Goldschmidt to point to the ‘empty chair' and say the fault, if any, was that of Dr. Soud." (Infra, at p. 514.) The evidence of Dr. Soud’s negligence cannot be completely separated from the alleged negligence of Dr. Goldsmith so as to leave Dr. Soud the sole negligent actor on this record. The negligence of Dr. Soud as contended by plaintiff cannot be treated as an independent intervening cause rather than a concurring cause for the reason that it is undisputed on this record that Dr. Soud was covering for Dr. Goldsmith and was expected to provide continuing diagnosis and treatment to Taletha as needed upon call.